LOUIS FREDRICKSON v. ALBERT JOHNSON.[1]

February 25, 1895.

No. 9133.

**Slander—Malice.**

Where defamatory words of the same import as those sued upon are repeated upon several occasions prior to the time of publishing the defamatory words alleged in the complaint, they may be shown and are admissible in evidence on the trial to show malice, whether they are addressed to third persons or to the person defamed.

**Same—Imputing Crime—Innuendo.**

Words which impute to a person the guilt of a criminal offense, and. where their meaning is apparent on the face of the defamation itself, an innuendo in reference to the meaning of such words is surplusage.

**Verdict—Excessive.**

The verdict of the jury in behalf of plaintiff for the sum of $5,000 *held* excessive, and that a new trial should be granted, unless the plaintiff consent to remit all of the same in excess of $3,000.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., denying a motion for a new trial. Reversed on condition.

*Young, Fish & Dickinson,* for appellant.

It is no publication where the words are only communicated to the person defamed. Odgers, Libel, 150; Starkie, Sland. 13, 14; 2 Bouvier, 485. Evidence of former or subsequent defamation is only admissible to determine quo animo the words were published; that is, when malice in fact is in issue. 13 Am. & E. Enc. L. 431, and cases cited; Odgers, Libel, 280. It is what is understood by those who hear the whole conversation which is to determine the slanderous character of the utterances. Kidd v. Ward (Iowa) 59 N. W.

[1] Reported in 62 N. W. 388.

279. The court is to determine from all that was said in the altercation whether the words in the connection shown were actionable, and support the verdict. If they were not used by defendant, or understood by the bystanders, in an injurious sense, they are not actionable. McCarty v. Barrett, 12 Minn. 398 (494); Starkie, Sland. 44, 45; Van Rensselaer v. Dole, 1 Johns. Cas. 279; Ritchie v. Stenius, 73 Mich. 563, 41 N. W. 687; Fawsett v. Clark, 48 Md. 494; Hall v. Adkins, 59 Mo. 144; Brown v. Myers, 40 Ohio St. 99; McKee v. Ingalls, 4 Scam. 30; McCaleb v. Smith, 22 Iowa, 242; Parmer v. Anderson, 33 Ala. 78; Robinson v. Keyser, 22 N. H. 323; Sibley v. Marsh, 7 Pick. 38; Phillips v. Barber, 7 Wend. 439; O'Donnell v. Hastings, 68 Iowa, 271, 26 N. W. 433; Newell, Defam. 103, 519; Cooley, Torts, 196; Jauch v. Jauch, 50 Ind. 135; Gove v. Blethen, 21 Minn. 80; Warner v. Lockerby, 31 Minn. 421, 18 N. W. 145, 821. The verdict was excessive. Holmes v. Holmes, 64 Ill. 294; Smith v. Chicago Herald, 50 Alb. L. J. 23. The explanation given by defendant why he would not employ plaintiff and assist him in getting contracts was privileged. The question of privilege should have been submitted to the jury. Marks v. Baker, 28 Minn. 162, 9 N. W. 678; Fahr v. Hayes, 50 N. J. Law, 275, 13 Atl. 261; Toogood v. Spyring, 1. Cr. M. & R. 181; Newell, Defam. 345; Remmington v. Congdon, 2 Pick. 310; Heller v. Howard, 11 Bradw. 554; Brow v. Hathaway, 13 Allen, 239; Dale v. Harris, 109 Mass. 193; Klinck v. Colby, 46 N. Y. 427. The court should have charged the jury to find for defendant if the words were spoken in the heat of passion provoked by plaintiff's wrongful acts or insulting language. Newell, Defam. 902; Warner v. Lockerby, supra. The court' should have charged to find for defendant if the words were spoken to plaintiff personally on an occasion sought by him, and not in the presence of any· person present at defendant's procurement. Starkie, Sland. 13, 14; 3 Lawson, Rights, R. & Pr. § 1236; Heller v. Howard, supra; Warner v. Lockerby, supra.

*O. Mosness,* for respondent.

Not only words spoken at other times, but other acts, from which actual malice is inferable, may be shown. Townshend, Sland. §§ 391–393, and cases cited; Reitan v. Goebel, 33 Minn. 151, 22 N. W. 291; Gribble v. Pioneer Press Co., 34 Minn. 342, 25 N. W. 710;

Larrabee v. Minnesota Tribune Co., 36 Minn. 141, 30 N. W. 462. Where the language is ambiguous the manner in which it was or might be understood is material and will control, but where the language is unambiguous it is to be construed in its ordinary sense. Townshend, Sland. § 140; Maybee v. Fisk, 42 Barb. 326; Jaringen v. Fleming, 43 Mo. 711; Shull v. Raymond, 23 Minn. 66. The verdict was nôt excessive. McCarthy v. Niskern, 22 Minn. 90; City of Joliet v. Weston, 123 Ill. 641, 14 N. E. 665; Pratt v. Pioneer Press Co., 32 Minn. 217, 18 N. W. 836, and 20 N. W. 87; Dennis v. Johnson, 42 Minn. 301, 44 N. W. 68; Blakeman v. Blakeman, 31 Minn. 396, 18 N. W. 103; Wilson v. Fitch, 41 Cal. 363; Jones v. Greeley, 25 Fla. 629, 6 South. 448; Alliger v. Brooklyn Daily Eagle, 6 N. Y. Supp. 110; Buckley v. Knapp, 48 Mo. 152; Fry v. Bennett, 4 Duer, 247; Gfroerer v. Hoffman, 15 Upp. Can. Q. B. 441; Letton v. Young, 2 Metc. (Ky.) 558; Whiteman v. Leslie, 54 How. Pr. 494; Bowe v. Rogers, 50 Wis. 598, 7 N. W. 547.

BUCK, J. The plaintiff brought this action to recover damages which he claims that he has sustained by reason of the defendant defaming his character. In the complaint it is alleged that at the city of Minneapolis on July 13, 1893, the defendant "did, in the presence and hearing of a large number of persons and citizens, falsely and maliciously speak and publish of and concerning the plaintiff the false, scandalous, malicious, and defamatory words following, that is to say: 'You (meaning the plaintiff) are a damned robber. You (meaning the plaintiff) are a damned thief. You (meaning the plaintiff) and Dennis (meaning one W. H. Dennis) stole from me (meaning the defendant). You (meaning the plaintiff) and Dennis robbed me (meaning the defendant). You (meaning the plaintiff) and Dennis planned together to rob me, and did rob me (meaning the defendant),'—thereby then and there meaning and intending to charge that plaintiff was a common thief, and that the plaintiff and the said W. H. Dennis had feloniously robbed, stolen from, and otherwise defrauded the defendant." The defendant, in his answer, alleges that in the year 1887 and 1888 he was having constructed for himself, in the city of Minneapolis, a brick building of great value, known as the "Oneida Building"; and that one W. H. Dennis was the architect and superintendent of construction;

and that the contract for doing the brickwork was let to the plaintiff; and that in the prosecution of the work the defendant was credibly informed, and had reasonable cause to believe, and did believe, that plaintiff, for the purpose of cheating and defrauding the defendant, and with the knowledge of said Dennis, did cause to be made out false and untrue statements of the amount of brickwork pretended to be done and performed by the plaintiff in and about the construction of said building, by which the amount claimed to be due and owing to plaintiff from this defendant for work done upon said building was made to appear very much larger than the amount actually due and owing thereon. The defendant in his answer further alleges that while he was quietly walking along the streets of the city of Minneapolis, at the time of the alleged speaking of the slanderous words, he was accosted by the plaintiff, who used towards him abusive and threatening words; and that it was in reply to the plaintiff's charges and accusations that he said to the plaintiff that he (defendant) had been informed and believed that plaintiff, while engaged in the construction of the Oneida Building, had caused to be made out a false statement of the amount of work done by him, and had thus attempted to cheat and defraud defendant, and did, by obtaining more for his work than he was entitled to, cheat and defraud defendant, which acts defendant then denounced and characterized as robbing and stealing; and that he was also provoked by the wrongful, insulting, and menacing manner and abuse of the plaintiff to use such language at that time, which was so used by him in the heat of passion, so provoked by the abusive language and acts of plaintiff. We have quoted only a part of the defendant's answer, but sufficient, however, to present the main facts for our consideration. The jury found a verdict in favor of the plaintiff for the sum of $5,000. The most material question presented for our consideration is as to whether the amount of damages is excessive. Before discussing that question, however, we will dispose of one or two others raised by the appellant's counsel.

1. It is contended that it was not competent for the plaintiff to introduce evidence of prior conversations between the parties to show a malicious publication of the slander charged in the complaint. "Slander is defamation without legal excuse published

orally, by words spoken, being the object of the sense of hearing."
Newell, Defam. 33. The publication of slander is in itself evidence
of malice, but, while it is not a publication when the words used are
only communicated to the person defamed, they might in such a
case be evidence of malice. Therefore, defamatory words of the
same import as those sued upon, where they are repeated on several
occasions prior to the time of publishing the defamatory words
alleged in the complaint, may be shown as evidence of malice,
whether they are addressed to third persons or to the person de-
famed. Newell, Defam. 331. Such defamatory words cannot, how-
ever, be given in evidence as substantive causes of action themselves,
where they are not pleaded, but only for the purpose of proving
malice on the part of the defamer, and they may be admitted as
evidence for the purpose of proving actual malice, and thereby ag-
gravating the damages. Gribble v. Pioneer Press Co., 34 Minn. 342,
25 N. W. 710.

2. The appellant also assigns as error the fact that the court be-
low, in his charge to the jury, gave the definition of "larceny" and
"robbery" as defined in the Penal Code. The plaintiff alleges in his
complaint that the defendant called him a "robber" and a "thief."
These words, applied maliciously by one person to another, in the
presence and hearing of third persons, are defamatory and action-
able of themselves. Their meaning is apparent on the face of the
defamation, and such meaning was neither altered, enlarged, nor
restricted by the allegations of the complaint that by such language
the defendant intended to charge that plaintiff was a common thief.
If the plaintiff intended the latter words as an innuendo to define
the meaning of the words "robber" and "thief," they should be re-
garded simply as surplusage. It was proper, therefore, for the trial
court to give to the jury the definition of "robber" and "thief" as
defined by the Penal Code.

It is claimed that the verdict should be set aside for excessive
damages. In cases of this kind there are no fixed rules or mathe-
matical standard for measuring damages, and the amount thereof
must necessarily be confided to the sound, careful, deliberate, and
reasonable discretion of the jury, but as it has been well said in ref-
erence to the jury in such cases: "The law leaves the liberty to
find and return such damages as they think right and just; but this

is not a wild, unrestrained, communal liberty, to be arbitrarily exercised, but the higher and better kind of liberty, viz. liberty restrained by reason and moderated by justice." McDonald v. Woodruff, 2 Dill. 244, 248, Fed. Cas. No. 8,770. An action for slander is designed to furnish indemnity, so far as money can do it, for the injury done, and also to vindicate the character of the person wrongfully assailed. A verdict for damages in behalf of the person unjustly defamed serves to prevent repetition of the wrong. The law affords protection against that defamation which attempts to destroy or sully the good name of the people, and it would be a disgrace to the law if it were otherwise. But punishment should not be meted out to the wrongdoer so outrageously exorbitant as to be entirely disproportioned to the injustice done. Human·weakness sometimes finds a fertile soil in trials by jury, where we find the vicious influence of passion, prejudice, partiality, or corruption occasionally bearing fruit through perverted judgment in grossly unreasonable, outrageous, and excessive damages awarded by the verdict. In such cases the court may exercise its judicial discretion without trenching upon the province of the jury, and set aside the verdict, or conditionally reduce its amount. But where the defamatory words spoken are purely those of malice, without any claim of justification or apparent excuse, courts seldom interfere with the verdict of a jury. While the defendant did not justify his acts in speaking the words complained of, and substantially admitted speaking them, he did claim as a defense that the words used were not intended by him or understood by those who heard them to charge the plaintiff with having committed a crime.

While the jury found a verdict in favor of the plaintiff upon the question of defamation, there is ample evidence to show that the defendant, at and prior to the time of the speaking of the defamatory words, thought that he had reliable information that plaintiff and one Dennis had cheated him in the construction of the Oneida block, of which plaintiff was the contractor in doing the brickwork for the defendant. The words complained of had reference to and were intended to characterize this transaction between the parties, which transaction, if true, would not have constituted a crime. Plaintiff himself understood this perfectly well, and testified that he and the defendant had quarreled several times about the matter. He fur-

ther testified that he had a letter to show what the defendant claimed he stole from him. This letter was produced in evidence, and there is not a charge of larceny or robbery in it, although it plainly states the grievance out of which sprung the defamatory words sued upon. One James Clayton, a witness for plaintiff, who heard the defamatory words spoken, testified, and, among other things, said: "Johnson spoke to me about it. He spoke about his dissatisfaction with Fredrickson's work, and, when he said that he would not shake hands with a damned thief, I had an idea what he referred to. I did not understand him to mean that Fredrickson had actually stolen some property of his, and carried it away. I did not take it that way. I understood it with reference to their quarrel about the Oneida building, and that is true of all the statements I ever heard Johnson make." Herman Voght testified to substantially the same. The only other witness for plaintiff was Dennis, and he knew what the charge referred to. While plaintiff testified that there was a large number of persons in the hearing of the defendant at the time he spoke the defamatory words, not one of them was called by plaintiff as a witness to show that they understood the defamatory words in any other sense than did the plaintiff or the witnesses who testified in his behalf. It is true the language of the defendant to the plaintiff was defamatory, without legal excuse, and reprehensible from its repetition on several occasions; yet it does not appear that these words were ever uttered to third persons, or on occasions except when plaintiff was present, and then when defendant was angry about plaintiff's conduct in their business transactions.

Upon the whole case, we are of the opinion that, in estimating the damages, the jury must have failed to take into consideration some of the mitigating elements to which we have briefly referred, and that the verdict, under the evidence and attending circumstances of the case, is greater than it should have been. The order of the district court denying the motion for a new trial will be reversed, and a new trial granted, unless the respondent file in the district court a remittitur of the sum of $2,000 within 30 days after the mandate from this court shall be filed in said district court. In case such remittitur is filed, the plaintiff may recover judgment upon said ver-

dict in his behalf in the sum of $3,000, and the order of the lower court stand affirmed for that amount.

CANTY, J. I dissent from the foregoing opinion so far as it holds that the verdict is excessive. The uncontradicted evidence shows that plaintiff is, and for 15 years has been, a contractor of brickwork in the construction of buildings, and has been doing a business of from $50,000 to $250,000 per year. There was ample evidence from which the jury were justified in finding that the slanderous words complained of were intended to injure, and did injure, plaintiff in his said business, and that defendant had repeatedly uttered and published these slanders for the purpose and with the intent of so injuring plaintiff in his business. It is impossible to determine the exact amount of this injury; but, where the business was so large, the jury were justified in finding that the damage amounted to $5,000.

The opinion of the majority holds that defendant did not intend to charge plaintiff with the commission of a crime. The three witnesses for plaintiff who heard the slander uttered knew the parties, had previous information concerning the controversy between them, and did not understand that defendant intended to charge plaintiff with actual theft or robbery. For this reason the majority hold that it should be presumed that none of the many strangers who must have heard the slander uttered understood the defendant to mean what he said, or to charge the commission of a crime. The plaintiff testified that he was at his work, constructing a certain bank building, when defendant came along and uttered this slander; that, during the altercation which followed, there must have been about 1,000 people present, and defendant repeated the charge several times. The witness Clayton testified: "We were just going to start away. * * * Johnson came along, and shook hands with me, and looked around to Mr. Fredrickson, and said, 'I don't shake hands with a damned robber like you.' He said that to Fredrickson. That was the first conversation between these men. We walked along, and Johnson followed. He walked by the side of Fredrickson, and kept talking with him. When we got to the corner of the old National Bank building, Johnson began to talk pretty loud, calling plaintiff a thief and liar and robber, and brought up about

Dennis and Fredrickson trying to rob him. * * * Johnson be-
gan to talk louder, and was drawing other people's attention. A
good many people were congregated there. I stood on the sidewalk
opposite the Collom block a few minutes. The phrases 'thief' and
'robber' were repeated by defendant several times. * * * After
we came on the other side of the street, and before we got as far as
the Rochester block, he talked very loud there. You could hear him,
I should judge, across the street." The witness Voght testified: "I
drove up Hennepin, and got as far as the Globe building, when
there was a crowd opposite. I looked over, and saw Fredrickson
amongst the rest. * * * There were several men around when I
arrived. I don't think there were 1,000. They were gathered the
same as any noise or disturbance would create on the street. I
hitched my horse, and went over and listened to the altercation.
It lasted ten minutes, I should think. After the conversation ended,
the crowd scattered." He also testified that during the altercation
he heard defendant call plaintiff a "thief" and "robber." The de-
fendant does not dispute the evidence that he and plaintiff were sur-
rounded by a crowd during a part of the altercation. Under these
circumstances, I certainly am not ready to hold, as a question of law,
that defendant did not intend to charge plaintiff with the commis-
sion of a crime, or to hold that none of the crowd understood him
so to charge. This court should not hold that the jury had no right to
find that defendant intended the necessary consequence of his own
acts. In the presence of a crowd, he charged plaintiff with being a
thief and a robber. On their face, the words were not ambiguous,
but had a plain, unequivocal meaning. To those who knew the cir-
cumstances the words had a different meaning, but a meaning none
the less actionable. Defendant attempts to defend on the ground
that he charged plaintiff with dishonesty in his business, and that
several who heard the charge so understood it. This only increases
the amount of substantial compensatory damages which plaintiff is
entitled to recover. His business was large, and in its nature very
susceptible to injury from such slanders, especially when uttered
by a responsible person. Words which impute to the plaintiff fraud
or dishonesty in his trade, profession, or business, even though not
charging him with the commission of a crime, are actionable, with-
out proof of special damage. Odgers, Libel, 72–80.

In my opinion, the verdict is not excessive.