SAMUEL D. PETERSON v. WESTERN UNION TELEGRAPH COMPANY.[1]

June 4, 1896.

Nos. 9998—(108).

**Libel—Telegram—Malicious Publication.**

The defendant received at its office at New Ulm a message directed to the plaintiff, at St. Paul, in these words: "Slippery Sam, your name is pants. [Signed] Many Republicans." It forwarded the message over its wires to its operator at St. Paul, who there wrote it down, placed it in a sealed envelope, and caused it to be delivered to the plaintiff. *Held*, that the message, on its face, was susceptible of a libelous meaning, and that the evidence was sufficient to justify a finding by the jury that the defendant maliciously published the libel.

**Same—Excessive Verdict.**

*Held*, further, that a verdict against the defendant for $5,200 damages for such publication is so excessive as to justify the conclusion that the verdict was the result of passion and prejudice.

Appeal by defendant from an order of the district court for Brown county, Webber, J., denying a motion for a new trial. Reversed.

[1] Reported in 67 N. W. 646.

*Ferguson & Kneeland*, for appellant.

The words were not libelous per se. If they had a peculiar meaning at New Ulm, it is immaterial, since such meaning was not known to the operator there or to the operator at the other end of the line. Hankinson v. Bilby, 16 M. & W. 442; Shull v. Raymond, 23 Minn. 66. Even if in sending the telegram the New Ulm operator, though not legally excusable, was acting under a mistaken sense of duty, this is a case "at most for only compensatory and not for vindictive damages." Wiggin v. Coffin, 3 Story, 1, Fed. Cas. No. 17,624. Punitive damages are not to be inflicted except for actual malice. Hoffman v. Northern Pac. R. Co., 45 Minn. 53, 47 N. W. 312. And malice of agent is not imputable to principal. Eviston v. Cramer, 57 Wis. 570, 15 N. W. 760; Wardrobe v. California Stage Co., 7 Cal. 118; Hill v. New Orleans, O. & G. W. R. Co., 11 La. An. 292; Detroit Daily Post Co. v. McArthur, 16 Mich. 447; 1 Sedgwick, Dam. § 378, and note. It is the duty of court to control the action of the jury in rendering excessive verdicts. Woodward v. Glidden, 33 Minn. 108, 22 N. W. 127; Dillon, Laws & Juris. of Eng. & Am. 130; Pratt v. Pioneer P. Co., 32 Minn. 217, 18 N. W. 836, and 20 N. W. 87; Bridge v. City of Oshkosh, 71 Wis. 363, 37 N. W. 409. Exemplary damages cannot be recovered where the damages are at most nominal. Stacy v. Portland Pub. Co., 68 Me. 279.

It is within the power, and is the duty, of the court to set aside an excessive verdict in a suit for libel or other tort as in any other action. Templeton v. Graves, 59 Wis. 95, 17 N. W. 672; Duffield v. Tobin, 20 Ga. 428; Young v. Hairston, 3 Dev. Law, 55; Nettles v. Harrison, 2 McCord, 230; Burkett v. Lanata, 15 La. An. 337, cited in 1 Sedgwick, Dam. § 388. Purely vindictive damages may be so extravagant as to warrant the setting aside of a verdict. 1 Sedgwick, Dam. § 388; McCarthy v. Niskern, 22 Minn. 90; Woodward v. Glidden, supra; Dennis v. Johnson, 42 Minn. 301, 44 N. W. 68; Ritchie v. Holbrooke, 7 Serg. & R. 458; Cottle v. Cottle, 6 Greenl. 140; Cilley v. Bartlett, 19 N. H. 312; Burke v. McDonald, 2 Idaho, 1022, 29 Pac. 98.

There was no publication by defendant. The fact that there is no precedent for such a claim raises a strong presumption against it.

Russell v. Men of Devon, 2 T. R. 667, per Ashhurst, J.; Altnow v. Sibley, 30 Minn. 186, 14 N. W. 877. See, also, Francis v. Western U. Tel. Co., 58 Minn. 252, 59 N. W. 1078. In the case of husband and wife, there can be no publication of a libel by one to the other. Sesler v. Montgomery, 78 Cal. 486, 21 Pac. 185; Wennhak v. Morgan, L. R. 20 Q. B. Div. 635. See Scott & Jarnagin, Law of Telegraphs, §§ 138, 138a.

A telegraph company has no right of election as to the transmission of messages. It cannot refuse to transmit any message couched in proper language because of its supposed illegal, immoral or otherwise improper purpose. Gray v. Western U. Tel. Co., 87 Ga. 350, 13 S. E. 562; 35 Am. & Eng. Corp. Cas. 47–50; Western U. Tel. Co. v. Ferguson, 57 Ind. 495; G. S. 1894, §§ 2635–2641; Penal Code, § 482, G. S. 1894, § 6782; Primrose v. Western U. Tel. Co., 154 U. S. 1, 14 Sup. Ct. 1098.

It is not easy very precisely to define what is and what is not a privileged communication. Wenman v. Ash, 13 C. B. 836, cited in Townshend, Sland. & L. § 209. See Marks v. Baker, 28 Minn. 162, 9 N. W. 678; Traynor v. Sielaff, 62 Minn. 420, 64 N. W. 915; Townshend, Sland. & L. §§ 120, 208, 209; Rector v. Smith, 11 Iowa, 302; Taylor v. Hawkins, 16 Q. B. 308. A publication fairly made by a person in the discharge of some public or private duty, whether legal or moral, comes within the class of privileged and authorized communications. Baron Parke in Toogood v. Spyring, 1 Crompton, M. & R. 181, cited in Marks v. Baker, supra, and in Moore v. Butler, 48 N. H. 161; Aldrich v. Press Printing Co., 9 Minn. 123 (133); Bishop, Non-Cont. Law, §§ 302, 303.

Plaintiff does not make out a case of libel. The publication, if any, was of spoken words, and the cause of action, if the words were defamatory, would be for slander. Townshend, Sland. & L. §§ 98, 108.

*S. L. Pierce*, for respondent.

The telegram was libelous. Newell, Defam. 304; Townshend, Sland. & L. § 130. The only question for the court is whether the words are capable of the defamatory meaning attached to them. The jury are to determine the true meaning. Newell, Defam. 304;

Pratt v. Pioneer Press Co., 30 Minn. 43, 14 N. W. 62; Woodling v. Knickerbocker, 31 Minn. 268, 17 N. W. 387; Blakeman v. Blakeman, 31 Minn. 396, 18 N. W. 103; Parmiter v. Coupland, 6 M. & W. 105; Bergmann v. Jones, 94 N. Y. 51. No evidence was necessary to prov. t'e meaning of the language. Gribble v. Pioneer Press Co, 37 Minn. 277, 34 N. W. 30. See More v. Bennett, 48 N. Y. 472; Townshend, Sland. & L. §§ 339, 344; Barrett v. Long, 8 Irish Law Rep. 331. If the language admits of a harmless as well as injurious meaning, which is the meaning to be attached to it will be resolved by the verdict of the jury. Townshend, Sland. & L. § 143; Newell, Defam. 303-4; Hamilton v. Eno, 81 N. Y. 116.

Malice in law does not necessarily imply the existence of malevolent feelings, but any wrongful act injurious to another, done intentionally, without just cause or excuse, the law deems to be malicious. Malice in fact implies a desire and intention to injure. The term express malice originated in the practice of requiring the plaintiff to prove malice by evidence other than implication when the words spoken or printed are, prima facie, privileged. Townshend, Sland. & L. § 60; Folkard's Starkie, Sland. & L., with Wood's notes, 398, n. 2; Bromage v. Prosser, 4 B. & C. 247; Wills v. Noyes, 12 Pick. 324, adopted in Lynd v. Picket, 7 Minn. 128 (184); Wilson v. Noonan, 35 Wis. 321; Gardner v. Minea, 47 Minn. 295, 50 N. W. 199. Evidence may be introduced showing actual malevolence, or it may be found from the character of the publication, as was done in the following cases: Tillotson v. Cheetham, 3 Johns. 56; White v. Nicholls, 3 How. 266; Bergmann v. Jones, 94 N. Y. 51; Evening News Assn. v. Tryon, 42 Mich. 549, 4 N. W. 267. See, also, Newell, Defam. 324.

A libel recklessly or carelessly published, as well as one induced by personal illwill, will support an award of punitive damages. Warner v. Press Pub. Co., 132 N. Y. 181, 30 N. E. 393; Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Morning Journal Assn. v. Rutherford, 1 U. S. App. 296, 2 C. C. A. 354, and 51 Fed. 513; Sun Printing Assn. v. Smith, 14 U. S. App. 173, 5 C. C. A. 91, and 55 Fed. 240; Post Pub. Co. v. Hallam, 16 U. S. App. 613, 8 C. C. A. 201, 59 Fed. 530.

At common law, in actions for damage sounding in tort, the court will not grant a new trial on account of excessive damages "unless

it appears that they are flagrantly outrageous and extravagant." Clerk. v. Udall, 2 Salk. 649; Pratt v. Pioneer Press Co., 32 Minn. 217, 18 N. W. 836, and 20 N. W. 87; 2 Thompson, Trials, § 2067.

While the gist of the action is malicious injury to the reputation, this injury is not necessarily the actual impairment of the plaintiff's reputation, but rather the assault upon it by the calumniator, whereby the plaintiff is caused to suffer indignity, or mental distress, which is a recognized element of actual damage, whether it is pleaded or not. Chesley v. Tompson, 137 Mass. 136; Wilson v. Noonan, supra; Simons v. Burnham, 102 Mich. 189, 60 N. W. 476; Farrand v. Aldrich, 85 Mich. 593, 48 N. W. 628; Warner v. Press Pub. Co., supra; Detroit Daily Post Co. v. McArthur, 16 Mich. 447; Townshend, Sland. & L. § 391.

As to exemplary damages see: Goddard v. Grand Trunk Ry., 57 Me. 202; Malloy v. Bennett, 15 Fed. 371.

STAET, C. J. This is an action for libel, in which the plaintiff recovered a verdict for $5,200, and the defendant appealed from an order denying its motion for a new trial.

The defendant on January 19, 1893, received at its office in New Ulm, from Albert Blanchard, a message for transmission over its telegraph line to St. Paul, which read thus: "New Ulm, Minn. 1–19, 1893. To S. D. Peterson, Care Windsor, St. Paul, Minn.: Slippery Sam, your name is pants. [Signed] Many Republicans." The New Ulm operator sent the message over the wires to St. Paul, where it was taken from the wire by the operator, and delivered to the plaintiff in a sealed envelope bearing his address as stated in the message.

The record presents three questions for our consideration: (1) Was the message a libel, or fairly susceptible, on its face, of a libelous meaning? (2) Was the evidence sufficient to justify the jury in finding that the defendant maliciously published the supposed libel? (3) Are the damages awarded so excessive as to justify the conclusion that the verdict was the result of passion and prejudice? We answer each of the questions in the affirmative.

1. The message was, on its face, fairly susceptible of a libelous meaning. The sting is in the word "slippery." This word, when used as descriptive of a person, has a well-understood meaning. It

means, when so used, that the person to whom it is applied cannot be depended on or trusted; that he is dishonest, and apt to play one false. Century Dict. If such is the meaning of the word as used in this message,—and of this the jury were the judges,—it was clearly libelous, because, if a man is dishonest, and apt to play one false, he merits the scorn and contempt of all honorable men. To falsely publish of a man that he is slippery tends to render him odious and contemptible. Such a publication is a libel. Wilkes v. Shields, 62 Minn. 426, 64 N. W. 921.

2. The question whether or not the defendant maliciously published the libel is one of some doubt, but we are of the opinion that it was a question for the jury, under the evidence.

Technically, the defendant published the libel when it communicated it to its operator at St. Paul, but whether such publication was wrongful (that is, actionable) depends on the further question whether or not it was privileged. The defendant was a common carrier, and was bound to transmit all proper messages delivered to it for that purpose, but it was not bound to send indecent or libelous communications. Where a proffered message is not manifestly a libel, or susceptible of a libelous meaning, on its face, and is forwarded in good faith by the operator, the defendant cannot be held to have maliciously published a libel, although the message subsequently proves to be such in fact. In such a case the operator cannot wait to consult a lawyer, or forward the message to the principal office for instructions. He must decide promptly, and forward the message without delay, if it is a proper one, and for any honest error of judgment in the premises the telegraph company cannot be held responsible. But where the message, on its face, is clearly susceptible of a libelous meaning, is not signed by any responsible person, and there is no reason to believe that it is a cipher message, and it is forwarded under such circumstances as to warrant the jury in finding that the operator, in sending the message, was negligent or wanting in good faith in the premises, the company may be held to have maliciously published the libel. A publication under such circumstances is not privileged. The evidence in this case was such that a finding either way on the question whether the defendant maliciously published this libel would not be disturbed by the court. Whether this question was correctly submitted to the jury on the

trial of this case, we need not inquire; for there must be a new trial on another ground, and, if there was such error, it is not likely to occur on the next trial.

3. The damages in this case are so excessive as to conclusively show that the verdict was the result of passion and prejudice. Courts should interfere with an assessment of damages by a jury with great caution, and sustain the verdict unless it appears that it was the result of passion or prejudice. But the verdict in this case admits of no defense. As correctly stated by the trial court in its instructions to the jury, the sole publication of the libel in this case by the defendant was in making it known to its own agent at St. Paul, and the damages of the plaintiff were limited to such as he sustained by reason of the publication to such agent. In view of the fact that such agent could not disclose the contents of the libel without becoming a criminal and exposing himself to serious punishment, and that there is no evidence to justify the inference that the contents of the message ever reached the public, except through the plaintiff, a verdict assessing his damages at $5,200 is simply farcical. It can only be accounted for on the ground that it was the result of passion or prejudice.

The trial court seems to have regarded the damages so excessive as to justify a new trial, except for the fact that this is the second verdict in the case, and that one reason for setting aside the former verdict was that the damages were excessive. As a rule, the court will not set aside a second verdict on account of excessive damages, but where, as in this case, the verdict is controlled by no reason, supported by no justice, and is manifestly the result of passion and prejudice, it is the duty of the court to set it aside, no matter how many similar verdicts may have been previously returned in the case.

Order reversed, and a new trial granted.