SAMUEL D. PETERSON v. WESTERN UNION TELEGRAPH COMPANY.

January 25, 1899.

Nos. 11,466—(225).

### Libelous Telegram—Liability of Company—Punitive Damages.

Where the station agent of a telegraph company, acting within the scope of his employment, maliciously transmits a libelous message over the wires of said company to another of its station agents, addressed for delivery to a third person, which is done accordingly, the company is liable in punitive damages.

### Verdict Excessive.

The verdict of the jury on behalf of plaintiff for the sum of $2,000 *held* excessive, and that a new trial should be granted, unless the plaintiff consent to remit all of the same in excess of $1,000.

Action for libel in the district court for Brown county. The case-

was tried before Webber, J., and a jury, which rendered a verdict in favor of plaintiff for $2,000. From an order denying a motion for a new trial, defendant appealed. Affirmed on conditions.

*Ferguson & Kneeland,* for appellant.

The submission of the question of punitive damages was error. The infliction of such damages in this jurisdiction rests on the theory that they are for punishment and example. Hoffman v. Northern Pac. R. Co., 45 Minn. 53; North v. Johnson, 58 Minn. 242. A corporation is not liable in punitive damages for wantonness or oppression on the part of its servant, not actually participated in by it. Lake Shore & M. S. Ry. Co. v. Prentice, 147 U. S. 101; Staples v. Schmid, 18 R. I. 224. See also Ricketts v. Chesapeake, 33 W. Va. 433; Downey v. Chesapeake, 28 W. Va. 732; Talbott v. West Virginia, 42 W. Va. 560; Robinson v. Superior, 94 Wis. 345; Hagan v. Providence, 3 R. I. 88; Cleghorn v. New York, 56 N. Y. 44; Murphy v. Central, 48 N. Y. Super. Ct. 96; Eviston v. Cramer, 57 Wis. 570; International v. Garcia, 70 Tex. 207; Dillingham v. Russell, 73 Tex. 47; Gulf v. Holzheuser (Tex. Civ. App.) 45 S. W. 188; Kiel v. Chartiers, 131 Pa. St. 466; Sullivan v. Oregon, 12 Ore. 392; Ackerson v. Erie, 32 N. J. L. 254; Haines v. Schultz, 50 N. J. L. 481; Great Western v. Miller, 19 Mich. 305; McCoy v. Philadelphia, 5 Houst. 599; Mendelsohn v. Anaheim, 40 Cal. 657; City v. Jeffries, 73 Ala. 183; Foster v. Pitts, 63 Ark. 387; Kutner v. Fargo, 20 Misc. 207; Warner v. Southern, 113 Cal. 105. The act of sending the message was not subject to adoption or repudiation by defendant, so as to affect its responsibility for an actual injury caused by it, if wrongful. There can be no ratification without both knowledge of the fact to be ratified and intention to ratify it. Edwards v. London, L. R. 5 C. P. 445, 447. Mere retention of a servant is not evidence of ratification. Dillingham v. Russell, supra; Gulf v. Holzheuser, supra; Williams v. Pullman, 40 La. An. 87. For those aggravations which may arise out of the servant's wantonness and malice, the employer is not on the same footing as the agent. Great Western v. Miller, supra; Hagan v. Providence, supra.

Even including punitive damages, the verdict is excessive. It is the duty of the court to set aside an excessive verdict, no matter

75 M.—24

how many verdicts have been returned.  Peterson v. W. U. Tel. Co., 65 Minn. 18.  See Woodward v. Glidden, 33 Minn. 108; Dillon, L. & J. Eng. & Am. 130; 1 Sedgwick, Dam. §§ 358-368; Pratt v. Pioneer Press Co., 32 Minn. 217, 35 Minn. 251; Bridge v. City, 71 Wis. 363; McCarthy v. Niskern, 22 Minn. 90; Dennis v. Johnson, 42 Minn. 301.

*S. L. Pierce*, for respondent.

By weight of authority and on principle, when the act of the agent is malicious or grossly negligent, the principal may, in the discretion of the jury, be punished, though the act may not have been authorized or directed by the principal, provided it was done in the authorized employment of the agent.  Everywhere it is conceded that, when the function of the agent is that of superintendent, the principal may be held liable in punitive damages, if the agent could have been held had he been acting in his own business.  2 Shearman & R. Neg. § 749; Baltimore & O. R. Co. v. Baugh, 149 U. S. 368, 381.  McHale was such a servant as is included in the term superintendent.  See Goddard v. Grand Trunk, 57 Me. 202; Wood, Mast. & S. § 323, and cases cited; 2 Shearman & R. Neg. § 479, and cases cited; Francis v. W. U. Tel. Co., 58 Minn. 252, 262. The verdict was not excessive.  Pratt v. Pioneer Press Co., 32 Minn. 217, 221.  After two successive verdicts have been set aside as excessive, the court will hesitate to set aside a third on that ground.  Clerk v. Udall, 2 Salk. 649; Chambers v. Robinson, 2 Strange, 691; Shaw v. Boston, 8 Gray, 45; Wilcox v. Landberg, 30 Minn. 93; Harrigan v. Savannah, 84 Ga. 793; McDonald v. Woodruff, 2 Dill. 244, note; Gulf, C. & S. F. Ry. Co. v. Ellis, 10 U. S. App. 640, 645.  The damages were not unreasonable.  In libel, the better the reputation, the heavier should be the damages.  See Malloy v. Bennett, 15 Fed. 371; Ferguson v. Evening Chronicle, 72 Mo. App. 462; Alabama v. Sellers, 93 Ala. 9; Marble v. Chapin, 132 Mass. 225; Williamson v. Frere, 43 L. J. C. P. 161; Young v. Fox, 49 N. Y. Supp. 634.

BUCK, J.

Action for libel.  Verdict for plaintiff for $2,000 damages, motion for new trial on part of defendant, which was denied, and it appeals. The plaintiff was a state senator, whose home was at New Ulm, but,

the senate being in session, and while the plaintiff was attending the same at St. Paul, the defendant, through its station agent P. R. McHale, at New Ulm, sent to the plaintiff the following telegraphic message:

"S. D. Peterson, care Windsor:
　Slippery Sam: Your name is pants.

Many Republicans."

This case has been before us on two former occasions. 65 Minn. 18, 67 N. W. 646, and 72 Minn. 41, 74 N. W. 1022. Upon the first appeal this court construed the message as susceptible of a libelous meaning on its face, but held that the verdict of $5,000 damages against the defendant was so excessive as to justify the conclusion that it was the result of passion and prejudice. Upon the second appeal the order of the trial court denying a new trial was reversed for errors of law occurring at the trial. The case has been tried four times, the verdicts each time varying in amount.

The more distinct and important errors assigned by the appellant are: First, that the plaintiff is not in any event entitled to recover, under the evidence in this case, anything more than actual damages, and not entitled to punitive damages or smart money; second, that the court erred in charging the jury that McHale, the agent of the defendant in receiving and transmitting the message in question, represented and stood in the place of the telegraph company, and that the defendant is liable and responsible for his acts and conduct in receiving and transmitting the message to the same extent that McHale would have been personally responsible had he been the owner and operator of the telegraph line; third, that the damages awarded by the jury are excessive, and appear to have been given under the influence of passion and prejudice.

Upon the first proposition we do not agree with the contention of counsel, unless his second proposition is sound as to the acts of the agent and as to the want of liability of the company for his acts. The trial court charged the jury that, if they found from the evidence that the defendant or its agent maliciously published the libel as charged, it was their duty to return a verdict in favor of the plaintiff for such damages as he had sustained to his reputation by

reason of the publication, and also gave as part of his charge the language used in the second assignment of error. This, of course, involves the question of the liability of the defendant for the act of the agent if he was actuated by malice or bad faith, and upon this question the jury found in favor of the plaintiff; that is, under this instruction the jury returned a verdict against the defendant for $2,000. Of course, if the action had been against McHale personally for his malicious publication of the libel, and the jury had found him guilty, they could have awarded punitive, vindictive or exemplary damages. It is clearly competent for a jury to find vindictive damages in an action for libel, where the publication was done maliciously. Newell, Defam., Sland. & L. 842; Bergmann v. Jones, 94 N. Y. 51. In the last case cited it is said that, when the falseness of the libel is proven, as a general rule it is sufficient to warrant the jury in giving exemplary damages.

But the important question in the case at bar is this, is the company itself liable for exemplary damages by reason of the act of the agent McHale, although it did not know, direct or authorize it? The answer to this is reached by considering and determining the powers and duties of the agent, and whether he was acting within the scope of his employment.

The defendant maintained a general telegraph office at New Ulm, and there McHale had the entire management of the business. Under this power and duty his business required him, as such agent, to examine writings, messages and communications, and transmit them to persons to whom they were addressed. From the very nature of the business, his position required him to do this. The company cannot well act in the numerous telegraph stations throughout the country except through agents. While these branch offices in general are under the management and control of a superintendent, manager or the corporation itself, yet this agent is almost universally recognized, as he must necessarily be, as the representative of the corporation itself. In the absence of the master the agent is the vice principal, superintending and controlling the business there transacted, and of course stands in the place of the master for the time being. It is right, therefore, that the responsibility and obligation of the master should flow with the duty conferred

and imposed, where the representative is acting within the scope of his employment. That is the case at bar.

McHale had control of the business at the New Ulm telegraph station. He alone saw the libelous message, and sending it was a matter incident to his business, and pertaining to the particular duty of his employment. He was acting in the capacity for which he was employed, and, having this power, he was acting within the scope of his authority. He did not perform the act for his own purpose, but for that of the master who employed him, and for the master's benefit. That he abused the authority is no defense in such case. The master had the choice of his agent, and for the abuse of that agent the master should answer to the citizen who became the victim of that abuse without his fault. One who employs another to do an act for his benefit, and who has the choice of the agent, ought to take the risk of injury to third persons by the manner in which he does the business. A telegraph corporation derives its legitimate corporate powers from the law, and that law should not be violated without a corresponding liability for torts committed under it. Station agents may be irresponsible pecuniarily, and if, for their malicious acts done in the scope of their employment, the corporation is not liable, the public would be at the mercy of an unscrupulous telegraph operator; and hence the public are greatly interested in such a question, and the liability for such wrongs should rest upon that body which by its acts creates the power and the opportunity for committing them. It would be a lamentable condition of the rights of the citizen if, under the guise of exercising lawful corporate powers, the corporation could permit the citizen to be defamed by the false and malicious publication of its agent while acting as its duly-appointed representative. In Scott & Jarnagin's Law of Telegraphs (section 138) it is said that

"The company can only perform the duty of sending and receiving a message through the intervention of an agent; and if he may wilfully and corruptly interfere with commercial transactions, or malignantly expose family affairs, and not involve the company, such a ruling would stimulate the wicked; whilst at the same time, good men would be convinced that their chances for indemnity rested alone upon the solvency of treacherous agents. We have seen no instance in the litigated cases where telegraph companies have

claimed such immunity.  *  *  *  However, the authorities are numerous and highly respectable, and conclusive except where controlled by binding local decisions, which hold the former liable for the wilful acts of the latter, when done in the performance of duties assigned."

In the same work it is said (section 138a):

"Aside from the statutory and common-law duty of good faith in the transmission of messages for the public, there is another sense in which telegraph companies may become responsible for mala fides and malicious use of its franchises.  A libel is any false, malicious and personal imputation, effected by any writings, pictures or signs, tending to alter the party's situation in society or business for the worse, and a corporation may become responsible for its publication, even in punitive damages."

Mr. Wood in his work on the Law of Master and Servant (section 323) says that:

"It may be regarded as settled by the better class of cases, that whenever exemplary damages would be recoverable, if the act had been done by the master himself, they are equally recoverable when the act was done by his servant."

And he cites the well-considered case of Goddard v. Grand Trunk, 57 Me. 202, where numerous authorities are collected supporting his view: It is true that this doctrine thus enunciated was applied in an action against a railroad corporation, but we perceive no distinction between it and a telegraph corporation.

For "a telegraph company is liable ex delicto for an injury done by its agents or servants to third persons, for misfeasance as well as nonfeasance." Scott & J. Tel. § 69.

In Shearman & R. Neg. (5th Ed.) pt. 2, c. 9, this question is thoroughly discussed, and it is there said:

"Where the relation of master and servant exists, the master is responsible to third persons for the damage caused by the wrongful acts or omissions of his servants, in the course of their employment as such.  *  *  *  The principle which lies at the foundation of this rule has been differently stated in several judicial opinions; and the abstract justice of the rule itself has been occasionally questioned.  But the soundness of the principle and the necessity of the rule, which we have inherited from the Roman law, have received

new and convincing illustrations in the immense development of modern corporations. If the rule of respondeat superior were now to be abrogated, it would be almost impossible to carry on the present complex business of society. Every person having any pecuniary responsibility would shelter himself behind the forms of a corporation, which would, in such case, be free from all responsibility for the negligence and violence of its agents, without direct evidence of authority for their acts, while such evidence could be, in almost every instance, suppressed."

This rule may frequently work a hardship, but when the master substitutes an agent or servant in his own place, and clothes him with power to act for the master's benefit in serving the public, he is not permitted to shelter himself behind the plea of nonliability for the act of the agent, and the rule of respondeat superior should not be relaxed, whether the master is a corporation or an individual.

Upon the proposition that the verdict of the jury awarding the plaintiff $2,000 is excessive, the court is in accord with the contention of the defendant.

"The sole publication of the libel in this case by the defendant was in making it known to its own agent at St. Paul, and the damages of the plaintiff were limited to such as he sustained by reason of the publication to such agent. In view of the fact that such agent could not disclose the contents of the libel without becoming a criminal, and exposing himself to serious punishment, and that there is no evidence to justify the inference that the contents of the message ever reached the public except through the plaintiff, a verdict assessing his damages at $5,200 is simply farcical. It can only be accounted for on the ground that it was the result of passion or prejudice."

This is the language used by this court in disposing of this case on the first appeal. 65 Minn. 18, 24, 67 N. W. 646. The same facts as ground for damages appear on this appeal, but the verdict is very much less.

The criminal liability for divulging the contents of any telegraph message or dispatch intrusted to him for transmission or delivery is found in G. S. 1894, § 6782, and is there made a misdemeanor, and punishable as such. This law also applies to all employees. If McHale had merely received the message, without any further act, neither he nor the company would have been liable, although he

well knew its contents. The publicity consisted in sending it to another agent or employee. If it could possibly be presumed that other employees might have heard its contents in its transmission, the same presumption exists of silence and secrecy on their part, because of their liability to punishment under the criminal law if they should divulge its contents. But it is not proven, nor can it be legally inferred, that others knew of its contents. The only person to whom its contents were divulged was the agent at St. Paul then under a penal obligation not to divulge the dispatch except to deliver it to the plaintiff.

The transmission of the dispatch, its receipt by the St. Paul agent, and the mental distress of the plaintiff constituted the basis of his right to damages. Of course, plaintiff himself making the message public would not be ground for damages, even if so made in order to maintain his right to prosecute this action. Considering all these facts, we are of the opinion that the damages awarded are excessive; that the jury must have been actuated by passion, prejudice, partiality, or swayed by some improper influence. In such case the amount should be reduced or a new trial granted. See Fredrickson v. Johnson, 60 Minn. 337, 62 N. W. 388.

The order of the district court denying the defendant's motion for a new trial must be reversed, and a new trial granted, unless the respondent file in the office of the clerk of the district court where the trial was had a remittitur of the sum of $1,000 within 30 days after the mandate of this court shall be filed in said district court. In case such remittitur is so filed, the plaintiff may recover judgment upon said verdict in his behalf in the sum of $1,000, and the order of the lower court stand affirmed for that amount.