# EDWIN I. NAVA v. NORTHWESTERN TELEPHONE EXCHANGE COMPANY.[1]

September 9, 1910.

Nos. 16,385—(146).

**Liability of master for servant's libel — question for jury.**

Plaintiff, having left defendant's employ, drew in payment of his salary an amount more than defendant's local office recognized as due him, but agreed to make good the excess if not finally allowed. Defendant's local manager, in full charge of and responsible for his handling of the local business, whose duty included that he should see "that all accounts are promptly collected," had had some personal difficulties with plaintiff. After the excess amount had been paid plaintiff, he wrote letters on defendant's letter heads to third persons to the effect that plaintiff had stolen the amount, and signed them as manager. He advised defendant's general manager of the situation, so as to straighten out the books, and sought permis sion to pay the voucher as cash taken from the cash drawer. This defendant refused to permit. Plaintiff paid the disputed amount to defendant's employee, who had cashed his voucher and he paid the company. It is *held* that the question of defendant's liability for the act of its servant was for the jury.

[1]Reported in 127 N. W. 935.

---

[Note]   As to liability of corporation for slander by its agent or employee, see note to Hypes v. Southern R. Co. (S. C. ) 21 L.R.A.(N.S.) 873.

Action in district court for Ramsey county to recover $22,500 damages for libel. The substance of the complaint and answer is given in the opinion. The reply denied that the letter in controversy was a personal letter; admitted that subsequent to the writing of the letter defendant attempted to repudiate it, but denied that it did or could repudiate it. The case was tried before Olin B. Lewis, J., who directed a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial ordered.

*W. H. Oppenheimer,* for appellant.
*C. D. & R. D. O'Brien,* for respondent.

JAGGARD, J.

The complaint of plaintiff and appellant charged that, after plaintiff had voluntarily left the employment of defendant, respondent defendant maliciously published in a letter concerning plaintiff these false words: "Mr. E. J. Nava, formerly of our cashier's department, left here about the 20th and I am advised that he is in your employment. When Mr. Nava left here, he stole from the cashier's department $18.37." Defendant also sent similar letters at the same time to other parties. By reason of said statements plaintiff was forced to leave his employment and was put to expense and suffered damage in a named sum. Defendant admitted that on or about the ninth day of April, 1908, one C. W. Rees, who was then defendant's local manager in the city of St. Paul, Minnesota, wrote the letter, but alleged the letter was the personal letter of said Rees, and was written without any authority from this defendant, and as soon as it was brought to the attention of the defendant it was repudiated by the defendant, both to the plaintiff and to the person to whom said letter was written. Defendant expressly stated to the plaintiff and to the person to whom said letter was written that said charge and all thereof contained in said letter was false and untrue. The court directed a verdict for the defendant. Plaintiff appealed from the order denying a new trial.

There is no controversy that the letter was libelous per se and that the libel was published. The only question is whether defendant

was liable in damages for the tortious act of its servant. The letter was sent by Rees, defendant's manager, who had had some difficulty or controversy with the plaintiff. This servant had full charge and was held responsible in the terms of his express instructions for his handling of the company's business within his exchange. "He is the custodian of the company's property, and as such is required to properly maintain and guard the same, * * * and see that all accounts are promptly collected. * * * He shall be guided by general instructions, approved by the general manager, telling him how to deal with the various details without referring them to higher authority. He shall hire all employees engaged in his exchange, in such numbers and at such salaries as may be authorized by the general manager, and shall have the power to discharge them when in his judgment it is required for the good of the service."

The charge of theft originated over a dispute as to the amount plaintiff was entitled to receive from defendant as his monthly salary. He drew a voucher for the full amount, which he understood from the treasurer he would be paid. One Melby, in the cashier's office, paid him that amount, on his agreement to make good the difference, if the dispute should be determined adversely to him. Rees wrote the letter complained of on defendant's letter heads and signed them as "Mgr." Inter alia, he asked to be advised if plaintiff had taken a position with the company addressed, so that he could be given an opportunity to make good. He reported to the general manager of defendant concerning this controversy and of his inquiry by letter (containing the libel). Among other things he wrote: "It may be possible that we may get this money from [plaintiff] at a later date. However, I wish you would kindly give me authority to pass the voucher [for the amount] as stolen from the cash drawer, in order that our cash may be straightened out." The assistant general manager replied, and required Melby to be held responsible. Rees then wrote the cashier of his attempt to get the general office to approve the payment by Melby, regretted that he had been unsuccessful, and concluded: "Therefore it is up to Mr. Melby to make good the shortage." This Melby did, and plaintiff reimbursed Melby. There are some minor controversies as to testimony, which we do not regard as material.

It was at least a question of fact for the jury whether defendant was liable for the conduct of Rees within the restricted rule of liability universally recognized, namely: The master is responsible for the tort of his servant, done in course of his employment with a view to the furtherance of the master's business, not for a purpose personal to himself, whether committed negligently or wilfully or contrary to the express instruction of the master. Barrett v. Minneapolis, St. P. & S. S. M. Ry. Co., 106 Minn. 51, 117 N. W. 1047, 18 L.R.A. (N.S.) 416, 130 Am. St. 585; Penas v. Chicago, M. & St. P. Ry. Co., infra, page 203, 127 N. W. 926. And see Ploof v. Putnam, 83 Vt. 252, 75 Atl. 277.

The letter concerned the local business, of which Rees had charge and for which he was responsible. He was attempting to guard its property. His action concerned the collection of defendant's accounts. The letter was certainly "published by defendant's servant acting in the course of his employment." Citizens v. Brown [1904] A. C. 423; Pennsylvania v. Henry Voght M. Co., 29 Ky. L. R. 861, 96 S. W. 551, 8 L.R.A. (N.S.) 1023; Trapp v. Du Bois, 76 App. Div. 314, 78 N. Y. Supp. 505 (in which the facts closely resembled those at bar). And see Fogg v. Boston, 148 Mass. 513, 20 N. E. 109, 12 Am. St. 583; Kane v. Boston, 200 Mass. 265, 86 N. E. 302; Peterson v. Western Union Tel. Co. 75 Minn. 368, 77 N. W. 985, 43 L.R.A. 581, 74 Am. St. 502; Washington G. L. Co. v. Lansden, 172 U. S. 534, 544, 19 Sup. Ct. 296, 43 L. ed. 543; Philadelphia, W. & B. R. Co. v. Quigley, 21 How. 202, 16 L. ed. 73.

We have examined the authorities to which defendant refers us. Most of these cases concern actions ex contractu, and are not in point. None of them, in view of the later decisions of the same courts which rendered them, are inconsistent herewith. Unlike Southern v. Fitzner, 59 Miss. 581, 42 Am. Rep. 379, this letter was written in the course of the performance of defendant's express instructions. In this view it is unnecessary to inquire whether defendant might also be held liable under another and larger criterion of liability.

Reversed and new trial ordered.

O'BRIEN, J., took no part.