## EDNA M. PATON v. GREAT NORTHWESTERN TELEGRAPH COMPANY OF CANADA.[1]

January 17, 1919.

No. 21,072.

**Telegraph and telephone — liability for sending defamatory message.**

1. A telegraph company is liable in damages to a wife for sending to her husband a defamatory message, neither true nor privileged, concerning her.

**Same — privileged message — charge to jury.**

2. The court properly instructed the jury that the sending of the defamatory message was privileged, if the operator acted carefully and in good faith, but was not privileged if he was negligent or wanting in good faith.

[1]Reported in 170 N. W. 511.

**Same — question for jury.**

3. Receiving from an utter stranger a message charging plaintiff with adultery, and sending it to her husband without any knowledge as to its truth, or as to whether the writer was entitled to send it as a privileged communication, and without making any inquiry, made the good faith of the operator a question for the jury.

**Same — malice — question for jury.**

4. There was sufficient evidence to make the existence of actual malice a question for the jury and to sustain their award of punitive damages.

**Damages not excessive.**

5. The amount of the verdict is not so unreasonable as to justify this court in interfering.

Action in the district court for Beltrami county to recover $2,500 for the delivery and publication of a false and defamatory telegram. The answer alleged that the transmission and delivery of the telegram was privileged by law, and that the message did not in the course of transmission and delivery become known to any person except W. J. Paton, to whom it was addressed, and the employees of the telegraph companies who were necessarily engaged in its transmission. The case was tried before Wright, J., who at the close of the evidence denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,800. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*C. M. Ferguson,* for appellant.

*Middleton & Middleton,* for respondent.

TAYLOR, C.

Plaintiff recovered a verdict against defendant for transmitting and delivering a libelous telegram to plaintiff's husband. Defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The material facts are not in dispute. At the time the libelous telegram was sent, plaintiff, a married woman, was postmistress at the village of Graceton in the county of Beltrami, and her husband, W. J. Paton, was on a visit to his brother, Robert Paton, at Mirror in the province of Alberta, Canada. Defendant had a telegraph line which

extended from Baudette, a village in Beltrami county about 12 miles east of Graceton, to Edmonton, Alberta, where it connected with a telegraph line of the Grand Trunk Pacific Telegraph Company which extended from Edmonton to Mirror. On September 21, 1916, one Christ Wilson entered defendant's office at Baudette and inquired of the operator in charge the rate for a 10-word telegram to Mirror, Alberta. While the operator was looking up the rate in his tariff book, Wilson wrote his message on one of the usual sending blanks. He was informed that the rate was one dollar, whereupon he placed a dollar on the telegram, passed it through the window to the operator and immediately departed. Wilson was entirely unknown to the operator and the above is all the conversation that took place between them. The message was as follows:

"W. J. Paton, Mirror, Alberta.

"Wife caught in adultery with Cox. Come at once. Answer.

"C. Wilson."

The operator at Baudette transmitted the message to the operator at Edmonton who transcribed it and delivered it to the operator of the Grand Trunk Pacific Company at that place. This operator transmitted it to the operator at Mirror who transcribed it upon the usual receiving blank and delivered it to Robert Paton, in whose care it was sent, and who happened to be in the office at the time it was received. Robert Paton delivered it to his brother, W. J. Paton. Whether the message was handed to Robert Paton to read or was delivered to him in a sealed envelope addressed to W. J. Paton, is in dispute and the evidence would sustain a finding either way.

The law is settled in this state that a telegraph company may be required to respond in damages for transmitting and delivering a message libelous on its face, unless the message be privileged or the charge be justified. Peterson v. Western Union Tel. Co. 65 Minn. 18, 67 N. W. 646, 33 L.R.A. 302; S. C. 72 Minn. 41, 74 N. W. 1022, and 75 Minn. 368, 77 N. W. 985, 43 L.R.A. 581, 74 Am. St. 502.

That the charge made in this message was false is conceded, and no attempt was made to justify it.

The defense is based on the claim that the message was privileged. No claim is made, however, that Wilson was actuated by any proper motive in sending it. On the contrary, it seems to be undisputed that his motive was purely malicious. Defendant contends that the message was privileged; that the only improper or wrongful publication of it was made by the operator at Mirror when he handed it to Robert Paton to read, if he did so; and that defendant is not liable for the negligence or fault of the operator of the other company. It is conceded that the contract, printed on the telegraph blank and under which this message was received and forwarded, relieved defendant from liability for the misconduct of the agents of the other company. Consequently unless defendant, acting through its own operators, wrongfully published the message, or caused it to be published, defendant is not liable. Defendant received this message at Baudette, and not only made its contents known to its operator at Edmonton and to the operator of the other company at Edmonton, but transmitted the message for the purpose of having it delivered to plaintiff's husband, and, in consequence thereof, it was delivered to him and read by him. Defendant caused the message to be published to plaintiff's husband as well as to the operators mentioned and is liable in damages therefor, regardless of any unauthorized publication by the other company, unless entitled to immunity on the ground that the message was a privileged communication. It was not privileged so far as Wilson was concerned, for he had no reason to believe it true, had no legitimate public or private interest to serve or duty to perform in sending it, and did not act in good faith. See cases cited in 2 Dunnell, Minn. Dig. § 5526, and in same section in 1916 Supplement.

Defendant received this message from an utter stranger. It was glaringly defamatory on its face. Defendant transmitted it without any knowledge as to its truth or falsity, without any knowledge as to whether the person who presented it was or was not a person who was entitled to send it as a privileged communication, and without making any inquiry of any kind. The court submitted the question as to whether the communication was privileged to the jury, and instructed them to the effect that it was privileged if the operator acted carefully and in good faith, but was not privileged if he was negligent or wanting in good

faith, in sending it. The facts and circumstances disclosed, warranted the submission of this question to the jury, and their verdict establishes that the message was not privileged.

Defendant contends that the court erred in submitting the question of punitive damages to the jury. The court charged the jury to the effect that they could allow punitive damages if they found that the operator, in sending the message, was actuated by malice and ill-will. This correctly stated the law. Peterson v. Western Union Tel. Co. 75 Minn. 368, 77 N. W. 985, 43 L.R.A. 581, 74 Am. St. 502. The operator testified that he received and sent the message without knowing or thinking that he had ever known any of the persons concerned in it, and defendant argues from this that he could not have sent it maliciously. W. J. Paton, to whom the message was sent, was a freight conductor on the same railroad for which the operator worked, and plaintiff presented evidence that they had come in conflict concerning their respective duties and authority, and tending to show that ill-will had existed between them. We think the evidence as a whole made a question for the jury on the issue of malice.

Defendant also contends that the verdict is excessive. It is not so unreasonable, in view of the odious nature of the charge contained in the message, as to justify this court in interfering.

A number of errors are assigned in respect to the rulings on the admission of evidence, and in respect to the charge and the refusal to charge, but we find none which require a reversal.

Order affirmed.