R. J. TODD COMPANY *vs.* THE BRADSTREET COMPANY.

Suffolk.   January 15, 1925. — June 27, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Libel*, Rating by mercantile credit company. *Practice, Civil*, Ordering verdict.

In an action by a corporation against a mercantile credit agency for alleged libel in publishing in its book of commercial ratings a statement to the effect that the plaintiff was "slow in meeting its business obligations;

was of low financial rating and was undeserving of any credit," it appeared that the rating given to the plaintiff was signified by the symbol "TE" and that from a key and notes published in the defendant's books that symbol meant that of first, second and third degrees of credit assigned in the books, the plaintiff was of the third degree assigned to one having its amount of property. The plaintiff did not contend that there was any malice on the part of the defendant. A verdict for the defendant was ordered. *Held,* that

(1) The definition given in the defendant's book to the symbol "TE" did not justify the meanings attributed to it in the plaintiff's declaration;

(2) The meaning which as a matter of law must be assigned to the symbol was that intended by the defendant;

(3) Testimony by an expert called by the plaintiff, showing that the symbol "TE," assigned to the plaintiff by the defendant, signified that he had "very poor credit indeed" and was not to be trusted, properly was excluded;

(4) It must be assumed that the ruling of the judge directing a verdict for the defendant was made with the declaration before him and in view of its averments and of the evidence offered in their support;

(5) The verdict properly was ordered.

TORT for libel with a declaration described in the opinion. Writ dated March 11, 1922.

In the Superior Court, the action was tried before *Fosdick,* J. The plaintiff offered to prove by one John N. Eaton, credit manager of Merchants National Bank of Boston, that the symbol "TE," assigned by the defendant to the plaintiff in its book of commercial ratings, meant that the plaintiff "had very poor credit indeed, and was not a concern to be trusted." The evidence was excluded. Other material evidence and exceptions by the plaintiff to the exclusion of evidence are described in the opinion. At the close of the evidence, by order of the judge, the jury returned a verdict for the defendant. The plaintiff alleged exceptions.

*A. W. Blakemore,* for the plaintiff.

*P. B. Buzzell,* for the defendant.

RUGG, C.J. This is an action of tort for libel in giving to the plaintiff a rating in its book of commercial ratings. The plaintiff is a corporation engaged since 1902 in the wholesale hardware business. The defendant operates a mercantile credit agency. It issues quarterly a book containing credit ratings of persons engaged in business through-

out the country, which it lends only to its subscribers under a written contract whereby each subscriber agrees to hold all information furnished by it in strict confidence and not to ask for information for use of others. As each new issue of the book is delivered to subscribers, the old is returned to the defendant and destroyed.

The plaintiff alleged in its declaration that it was in the hardware business, was financially sound, deserving of credit, and paid its bills with reasonable promptness; that the defendant is the proprietor of the commercial publication known as "Bradstreet's"; that therein it published "certain false and malicious statements in various forms to the effect that this plaintiff had been in the past and still was slow in meeting its business obligations; was of low financial rating and was undeserving of any credit," and that in consequence the plaintiff "has been greatly damaged in its reputation, that its credit has been destroyed" and its opportunity for profits seriously curtailed.

At the trial the plaintiff did not contend that there was express malice on the part of the defendant but did contend that the statement of rating was false and negligently made.

The evidence showed that the defendant in its book had printed opposite the plaintiff's name the letters "TE" and had given it by the use of these letters the same rating since 1905, but gave it no rating subsequent to April, 1921. There was no evidence of any statement made by the defendant concerning the plaintiff other than the printing of these letters opposite its name. The names listed in the defendant's book were graded and characterized by distinguishing letters. Estimated wealth was indicated by letters beginning with "G" and ending with "Z." The letter "T" signified an estimated wealth of from $10,000 to $20,000. There was no evidence that during the period here in question the plaintiff was of greater wealth than thus indicated. The allegation as to "low financial rating" therefore is unsupported and is laid to one side. Manifestly it was no wrong to the plaintiff to publish the truth as to its estimated wealth. Hence the case is narrowed to the question whether the plaintiff offered evidence in support of its other allegations that the defendant

has printed of it that it "was slow in meeting its business obligations" and was "undeserving of any credit."

The case hinges on the grade of credit "E" given to the plaintiff. On a page in the front of each of the defendant's books was a "Key" and "Notes." The "Key" consists of nineteen differing sums of estimated wealth, varying from those having $1,000,000 or more to those having from nothing to $500. The "Key" contains opposite each letter signifying estimated wealth three other letters indicating "Grades of Credit 1st 2d 3d." Opposite the estimated wealth of from $10,000 to $20,000, indicated by "T," are the letters "C D E," indicating respectively the first, second and third grades of credit for such business concerns. The "Notes" on this page in the front of the book are explanatory of the "Key." It there is stated, "Between Capital and Credit there is always a relative proportion. Capital is the foundation, while character, ability and circumstance govern, qualify and create credit. The recognition of all these factors is necessary to an intelligent determination and assignment of each and every grade of credit. The first grade opposite the 'Estimated Wealth' (as set forth in the Key) indicates that the means and credit are in relative proportion; that is to say, the credit indicated by 'Aa' represents the highest assigned with estimated wealth of more than $500,000; 'A' the highest for the estimate of $150,000 to $500,000; 'B' the highest for $35,000 to $150,000; 'C' the highest for $5,000 to $35,000; 'D' the highest for $1,000 to $5,000; and 'E' the highest for $1,000 or less. The several grades (1st, 2d and 3d) of credit are intended to reflect the information of record in our office."

In one of the answers to interrogatories which were put in evidence, the defendant had replied referring to the letters "TE" applied to the plaintiff: "Grade E indicates the credit as explained in the Key — namely, the third grade of credit for a merchant having estimated resources of so much. And this third grade does not indicate poor credit or that the person is not to be trusted. On the contrary, it indicates that the subject is trusted and has credit, subject to further confirmation by examination of the information in the Com-

pany's possession upon which this estimate is based. But the credit is relatively less high than first and second grade and the letter E does not and is not intended to state a fact, but only an opinion or estimate based on information in the Company's possession to which subscribers are referred."

This comprises all the evidence in the record tending to support the essential allegation of the declaration heretofore quoted. It is plain that all this evidence does not support the allegation that the defendant in print said in substance that the plaintiff was slow in meeting its business obligations or was undeserving of any credit. The letters "TE" carry no such significance unexplained. The definitions given to them in the "Key" and "Notes" justify no such meaning. The "Key" and "Notes" as a whole show that, with respect to every classification of business concerns, no matter how rich and solvent, there were three grades of credit. Simply to say that a merchant is in the third grade of credit under these circumstances manifestly cannot be the equivalent of saying the things charged in the declaration. On the contrary, the mere fact of placing against a business concern that grade of credit, even though "3d" instead of "1st," shows some degree of credit rather than that it is undeserving of any credit. Nor does that rating mean that such concern is slow in meeting business obligations. It may not be so prompt in availing itself of all discounts as one rated "1st," but that is not the equivalent of being slow in paying its bills.

Evidence offered by an expert on credits as to the meaning of "TE" in this connection was excluded rightly. In *Commonwealth* v. *Kneeland*, 20 Pick. 206, at page 216, it was said by Chief Justice Shaw: "It is a general rule of construction, in actions of slander, indictments for libel, and other analogous cases, where an offence can be committed by the utterance of language, orally or in writing, that the language shall be construed and understood in the sense in which the writer or speaker intended it. If therefore obscure and ambiguous language is used, or language which is figurative or ironical, courts and juries will understand it according to its true meaning and import, and the sense in which it was intended, to be gathered from the context, and from all the facts and circum-

stances under which it was used." That principle is applicable to the case at bar. The letters as printed were symbolical. But the defendant accompanied their publication with an explanation of the meaning in which it used them. There is nothing to warrant the inference that that explanation was not honest and made in good faith. Indeed, the conceded absence of malice shows that it was a correct explanation. In the absence of knowledge on the part of the defendant of the signification attached by others to the letters "TE" contrary to its printed explanation accompanying their use in every one of its books, it is not responsible for such misinterpretation of its meaning. *Stubbs, Ltd.* v. *Russell,* [1913] A. C. 386. *Wieman* v. *Mabee,* 45 Mich. 484. *Quinn* v. *Prudential Ins. Co. of America,* 116 Iowa, 522. *DeWitt* v. *Scarlett,* 113 Md. 47, 55. Cases relating to oral evidence touching the meaning of words or symbols in contracts, such as *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328, 332, and *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, are not relevant to the case at bar.

The result is that there was no evidence to sustain the allegations of the declaration. It must be assumed that the ruling of the judge directing a verdict for the defendant was made with the declaration before him and in view of its averments and of the evidence offered in their support. *Granara* v. *Jacobs,* 212 Mass. 271, 275. *Duggan* v. *Woodis,* 246 Mass. 431, 434. *Brasslavsky* v. *Boston Elevated Railway,* 250 Mass. 403.

It becomes unnecessary to consider the other questions argued.

*Exceptions overruled.*