## 11678

### JAMES v. WESTERN UNION TEL. CO. *ET AL.*

#### (126 S. E., 653)

1. LIBEL AND SLANDER—CHARGE THAT VERDICT, IF FOR PLAINTIFF, SHOULD BE AGAINST BOTH TELEGRAPH COMPANY AND EMPLOYEE JOINED AS DEFENDANT, HELD ERRONEOUS AS TO EMPLOYEE.—In action against telegraph company and employee for libel, in which the employee testified that he merely typewrote message as an accommodation to sender, and that sender then filed message with other employee for transmission, charge that verdict, if for plaintiff, should be against both defendants, *held* erroneous as to such employee.

2. APPEAL AND ERROR—REVERSAL AS TO ONE DEFENDANT HELD GROUND FOR REVERSAL AS TO CODEFENDANT.—In action against telegraph company and employee for libel based on transmission and delivery of telegram, reversal as to employee *held* to require reversal as to telegraph company, since jury might have rendered verdict in smaller amount if permitted to render verdict against telegraph company alone.

3. TRIAL—CHARGE THAT VERDICT, IF FOR PLAINTIFF, MUST BE AGAINST BOTH EMPLOYER AND EMPLOYEE HELD ERRONEOUS AS ASSUMING THAT

Note: On liability of corporation for slander by an agent or employee, see notes in 29 L. R. A. (N. S.), 929; 21 L. R. A. (N. S.), 873; L. R. A., 1916E, 774.

On the question as to whether article susceptible of libelous meaning, rendered nonlibelous by the fact that it would not be understood in a libelous sense by those acquainted with plaintiff, see note in 18 L. R. A. (N. S.), 622.

On rights of individual tort-feasors against whom a joint verdict has been obtained, as to new trial and appeal, see notes in 27 L. R. A. (N. S.), 209; L. R. A., 1918C, 970.

The question as to whether new trial or reversal for error as to measure of damages against one or more of the parties may be restricted to those parties, see note in 32 A. L. R., 255.

EMPLOYER WAS SOUGHT TO BE HELD LIABLE UNDER PRINCIPLE OF RESPONDEAT SUPERIOR.—In action against telegraph company and employee for libel based on transmission and delivery of telegram, charge that verdict, if for plaintiff, should be against both defendants *held* erroneous as to employee, in that it assumed that defendant employee was the sole agent through whose act the libel was published, without actual participation by the telegraph company, and that the company was sought to be held liable under principle of respondeat superior.

4. TRIAL—VERDICT MAY BE AGAINST EMPLOYER ALONE OR IN DIFFERENT AMOUNTS AGAINST EMPLOYER AND EMPLOYEE, WHERE PRINCIPLE OF RESPONDEAT SUPERIOR NOT RELIED ON.—Where employer, joined as defendant with employee, is not sought to be held liable under principle of respondeat superior, verdict may be against employer alone or in different amounts against the two defendants.

5. TRIAL—CHARGE HELD PREJUDICIAL IN ASSUMING FACT IN DISPUTE.— In action against telegraph company and employee for libel based on transmission of telegram, charge that verdict, if for plaintiff, must be against both defendants *held* prejudicial as to telegraph company in assuming that the defendant employee was the agent through whom the publication was effected, though it was a disputed question of fact.

6. LIBEL AND SLANDER—WORDS NOT ACTIONABLE PER SE AS CHARGING CRIME, UNLESS SO USED AND UNDERSTOOD.—Words of telegram referring to plaintiff as "you traitor to your county and your state" were not actionable *per se* as charging such crime, if used and understood by readers or hearers to be used with reference to acts or conduct on which no such crime could be predicated and from which no libelous charge could be inferred.

7. LIBEL AND SLANDER—REFUSAL TO CHARGE THAT WORDS WERE NOT ACTIONABLE PER SE AS CHARGING CRIME IF NOT SO USED OR UNDERSTOOD HELD ERROR.—In action for libel based on transmission of telegram referring to plaintiff as a "traitor," sent during heated political campaign, refusal to charge that words were not actionable *per se* if used and understood with reference to noncriminal acts or conduct from which no libelous charge could be inferred *held* error.

Before MEMMINGER, J., Lee, November, 1923. Reversed and remanded.

Action by William A. James against Western Union Telegraph Co. and J. T. Gray. Judgment for plaintiff and defendants appeal.

*Messrs. Francis R. Stark, Nelson & Mullins, R. E. Dennis* and *C. B. Ruffin,* for appellants, cite: *Communication of libelous matter from one agent of company to another is not a publication:* 9 L. R. A. (N. S.), 140; 104 Fed., 628; 71 N. W., 596; 53 N. Y. Sup., 1033; Ann. Cas., 1917-E, 985; 7 Ann. Cas., 192; 80 S. E., 429. *Company cannot divulge contents of telegram:* 37 Cyc., 1684; 70 S. C., 83; 97 S. C., 22; 241 U. S., 319. *Defamatory words may be explained:* 1 Johns. Cas. (N. Y.), 279; 72 N. Y., 418; Newell Lib. & S. (3d Ed.), 364-369. *Communication by one employee to another was qualified privilege:* 265 Fed., 873; 80 A. S. R., 319; 7 Ann. Cas., 192. *Publisher of a libel is not liable for repetition by others:* Ann. Cas., 1916-E, 900; 7 Ann. Cas., 601; 19 Ill. Ap., 570; 123 N. E., 802; 55 L. R. A., 732; 13 L. R. A., 97; 22 A. S. R., 673; 48 N. Y., 561; 28 Am. Rep., 579. *Evidence of malice insufficient to warrant punitive damages:* 17 Ann. Cas., 270; 14 Ann. Cas., 820; 38 L. R. A. (N. S.), 1176; 69 Am. Dec., 62; 13 A. S. R., 447; 76 A. S. R., 317; 62 L. R. A., 477; 112 A. S. R., 679. *Verdict may be had against one or both tort feasors:* 1 Mills Con. Rep., 333; 1 Bay, 11. *Except where wrong was committed by servant alone:* 104 S. C., 266; 106 S. C., 20. *In this case others than Gray might have been guilty of wrong and verdict would stand against either defendant:* 65 S. C., 344; 68 S. C., 55; 113 S. C., 522; 114 S. C., 21; Newell Lib. & S., 459. *Must be new trial as to both defendants:* 94 S. C., 189; 113 S. C., 522. *Error not to grant new trial where there was prejudice:* 122 S. C., 515; 96 S. C., 278; 91 S. C., 36; 94 S. C., 189.

*Messrs. M. L. Smith, W. C. Wolfe, H. C. Jennings* and *B. F. Kelly,* for respondent, cite: *Liability of corporation for slander:* 120 S. C., 514; 82 S. C., 315. *Employee and corporation liable:* 119 S. C., 245. *Company liable for actual and punitive damages for transmitting a libelous message:* 17 R. C. L., 317, 443; 40 L. R. A., 661; 43 L. R. A.,

581; 9 Ann. Cas., 693; 119 S. C., 245.  *Damage is for the jury:*  17 R. C. L., 444; Cheves L., 17; 122 S. C., 515; 233 U. S., 81.

February 12, 1925.

The opinion of the Court was delivered by Mr. Justice Cothran.

I concur in the conclusion that there should be a new trial as to the defendant J. T. Gray upon the ground of error in charging that the verdict must be against both defendants.

The defendant Gray testified that the message was typewritten by him at the request of the "Statesman," and as an accommodation to him; that he (Gray) handed the transcribed message back to the sender, and that the sender then filed the message with another employee of the telegraph company, the receiving clerk, for transmission, who accepted it and put it in the channel of transmission.  If the jury believed Gray's statement, it is manifest that they could not have found that the libel had been published by him, and, but for the charge that they must find a verdict against both defendants, the jury may have entirely exonerated Gray, and found a verdict against the telegraph company, based upon the publication of the libel by some other employee of the company engaged in receiving, transmitting, relaying, or delivering the message.

But I think that under the case of *Webber v. Jonesville,* 94 S. C., 189; 77 S. E., 857, it is inevitable that the verdict should be set aside, upon this ground, against both defendants.  In that case the action was in tort against six defendants, the town, the Mayor, and the four Aldermen.  The counsel for the town made a motion for a directed verdict in its favor, which the Circuit Judge refused, but instructed the jury that they must find a verdict in favor of the town.  The jury, disregarding this instruction, rendered a verdict for $150 punitive damages, against all six of the defendants.  Upon motion of the counsel for

the town and the four Aldermen, the Court granted a new trial in favor of these five defendants, and allowed the verdict to stand against Scott, the Mayor. Upon Scott's appeal the Court held that, where the amount of damages is uncertain, the verdict should not be set aside as to one or more of the defendants without setting it aside as to all, except under special circumstances. Mr. Justice Hydrick, delivering the opinion of the Court, said:

"It stands to reason that the jury rendered a bigger verdict against all the defendants, supposing that all would have to share the burden, than they would have rendered against any one of them. Therefore, to set it aside as to all except one imposes upon that one a greater burden than the jury intended he should bear, and the result is that the Court indirectly becomes the assessor of damages against him, and not the jury, which violates the spirit, if not the letter, of the right of trial by jury."

We may feel sure that, if the jury had been allowed to find a verdict against the telegraph company alone, the amount would not have been appreciably reduced by the absence of the individual defendant; yet that is entirely speculative; it was a matter for the jury and not for this Court.

Another very serious objection to the charge is that it assumed that the defendant Gray was the sole agent through whose act the libel was published and without actual participation (authorization or ratification) by the corporation; in other words, that the corporation was sought to be held liable under the principle of *respondent superior;* for, if not under that principle, the verdict may have been against the corporation alone or in different amounts against the two defendants. This was clearly in violation of the rights of Gray.

The charge was equally prejudicial to the telegraph company in assuming that Gray was the agent through whom the publication was effected, a debatable question of fact in the case.

I think, too, that the appellant's 6th exception should 6, 7 be sustained, The request to charge, the refusal of which is the basis of this exception, was as follows:

"The Court instructs the jury that, even though the words in question would from the ordinary meaning of the expression used imply a crime, yet they are not actionable *per se* as charging such a crime if they were used, and were understood by the readers or hearers to be used, with reference to acts or conduct on which no such crime could be predicated and from which no libelous charge could be inferred."

The proposition of law is sustained by *Van Rensselaer v. Dale,* 1 Johns. Cas. (N. Y.), 279. *Hayes v. Ball,* 72 N. Y., 418; Newell on Sland. & Lib. (3d Ed.), 364, 369. *Pegram v. Styron,* 1 Bailey, 595. *Shecut v. McDowell,* 3 Brev., 38; 5 Am. Dec., 536.

In *Pegram v. Styron,* 1 Bailey, 595, it was held (quoting syllabus) :

"Although the words spoken import a criminal charge, yet if they are explained at the time, or are understood by the persons who hear them, to refer to a matter not criminal, they are not actionable, without special damage."

Possibly fifty cases are cited in the Decennial Digest, title "Libel and Slander," key No. 19, which also sustains the proposition. If the matter had been left to the jury, it is not beyond the range of possibility, or even probability, that they may have concluded, in view of the notoriously heated political campaign of 1922, that the language of the telegram referred to the espousal by the plaintiff of the cause of the opponent of the candidate, a resident of the same county as the plaintiff, whom the sender of the telegram was intensely advocating. Such espousal may have reflected upon the plaintiff's county pride, but in no possible condition could it have amounted to treason, against the State.

I reserve my opinion upon the question whether the evidence showed a publication by the telegraph company of the libel.

A majority of the Court having concurred in this opinion, it is ordered and adjudged that the judgment of the Circuit Court be, and is hereby, reversed, and a new trial ordered.

Mr. Justice Marion and Mr. Acting Associate Justice Wm. P. Greene concur.

Mr. Acting Justice C. J. Ramage dissents.

Mr. Justice Watts dissents in part.

Mr. Acting Justice Ramage (concurring and dissenting): I concur in the opinion of Mr. Justice Watts, but dissent from the opinion of Mr. Justice Cothran. I think the Circuit Court ought to be affirmed as to the verdict against Western Union Telegraph Company.

Mr. Justice Watts in that part of his opinion concurred in by Messrs. Justices Cothran, Marion, and Greene, says:

"I think that his Honor was in error in stating to the jury: 'I don't see how you can possibly find a verdict for the plaintiff except against both defendants.' I think on this, the appellant, J. T. Gray, should have a new trial."

Mr. Justice Watts further states:

"There was evidence of negligence on the part of other servants of the Western Union Telegraph Company sufficient to carry it to the jury for their determination. There was evidence that more than one servant violated the rules of the company."

Mr. Justice Cothran, in an able opinion (which is the leading opinion), holds that, under the case of *Webber v. Jonesville,* 94 S. C., 89; 77 S. E., 857, the verdict should also be set aside as to the Western Union Telegraph Company.

I do not think that the *Webber case* applies in this case for the following reasons: (1) All the defendants in the *Webber case* joined in a single tort; in the present case there was a publication to each and every agent of the Western Union Telegraph Company to whom the message was re-

peated as well as to the daughter of the plaintiff—making a number of torts, as each publication constituted a fresh offense. (2) Justice Hydrick says on page 198 (77 S. E., 860), of the *Webber case:* "In *Carson v. Railroad,* 68 S. C., 55; 46 S. E., 525, and *Bedenbaugh v. Ry.,* 69 S. C., 1; 48 S. E., 53, the actions were against master and servant"; in the *Webber case* no question of master and servant arose: in the present case (James) J. T. Gray occupied the position of servant to his master, the Western Union Telegraph Company. Hence, under the holding of Justice Hydrick, this case would come under the rules promulgated in the *Carson* and *Bedebaugh cases* rather than the *Webber case,* and in these cases the master was held without the servant also being held. (3) There is no contribution among joint tortfeasors. Where A is a joint tort-feasor along with B, A cannot complain if the whole burden falls on him, as the liability of A and B is both joint and several. "It may be said to be the general rule that one of several joint tort-feasors cannot enforce contribution or secure indemnity from any of the other tort-feasors." 6 Ruling Case Law, p. 1054, § 17. *Union Stockyards of Omaha v. Chicago B. & Q. R. Co.,* 196 U. S., 217; 25 S. Ct., 226; 49 L. Ed., 453; 2 Ann. Cas., 525. *Campbell v. Phelps,* 1 Pick. (Mass), 62; 11 Am. Dec., 139. See notes, 73 Am. Dec., 147, and 16 Am. St. Rep., 254. (4) If Judge Memminger was wrong in his statement that there could only be a verdict against both defendants, and this error is predicated on the statement of Justice Watts: "There was evidence of negligence on the part of other servants of the Western Union Telegraph Company sufficient to carry it to the jury," what ground do we find to set aside the verdict when found? If there was negligence on the part of other servants sufficient to make a distinction between the liabilities of Gray and his codefendant, when the Judge was charging the jury, why will not this same distinction hold when it comes to upholding the verdict? In other words, if this negligence on the part of other

servants can be used in favor of Gray, why can it not be used against Western Union Telegraph Company?

It is clear to my mind that the negligence and unlawful acts of the other servants ought to be sufficient to sustain the verdict against Western Union Telegraph Company, for, if the negligence and unlawful acts of the other servants are sufficient to make a marked difference between Gray and his codefendant, when it comes to charging the jury, and to make an issue for the jury, then this same conduct of the other servants is sufficient to fix the liability of the codefendant of Gray, when a verdict has been found which the Circuit Judge has refused to set aside.

It is clear that the rule which ought to govern the matter of giving a new trial to the Western Union Telegraph Company is shown in *Sparrow v. Bromage,* 83 Conn., 27; 74 A., 1070; 27 L. R. A. (N. S.), 209; 19 Ann. Cas., 796, as follows:

"The Court may set aside a judgment recovered against two in a civil action to recover damages for unlawful imprisonment, as to one of the defendants, and permit it to stand against the other, where it clearly appears that the latter performed acts which would have rendered him liable if sued alone."

A joint tort-feasor who is himself guilty of the tort cannot compel contribution, and therefore is not harmed by the setting aside of the verdict as to another joint tort-feasor: 1 Black, Judgm., §§ 207, 315; 2 Black, Judgm., §§ 777, 779. *Wright v. Lathrop,* 2 Ohio, 33; 15 Am. Dec., 529; Buswell, Personal Injuries, § 31. *Corey v. Havener,* 182 Mass., 250; 65 N. E., 69. *Bailey v. Bussing,* 28 Conn., 458. *Whitaker v. Tatem,* 48 Conn., 521.

In the note to *Sparrow v. Bromage,* found in 27 L. R. A. (N. S.), 209, we find:

"Although some Courts hold to the contrary the preponderance of authority is to the effect that a verdict may

be set aside as to one alleged joint tort-feasor and permitted to stand as to others."

I simply refer to the excellent note appended to this case.

The case of *Sparrow v. Bromage* is also found in 19 Ann. Cas. 796, where, in an able note, it is shown that, while the early English cases were to the effect that a verdict could not be set aside as to some joint tort-feasors only, yet the preponderance of the modern cases hold that, where a verdict is returned against several tort-feasors, it may be set aside as to part of them only.

In the case of *Pence v. Bryant et al.*, found in 73 W. Va., 126; 80 S. E., 137, we find:

"Where, in a joint action for tort against three persons who unite in the same pleas, the jury finds generally against all of them, the Court may, in passing on their motion for a new trial, and the plaintiff's motion for judgment on the verdict against two (naming them), whose guilt the evidence establishes, and to dismiss as to the other, render such judgment as to the two defendants, and set aside the verdict as to the third, of whose guilt there is no proof."

This was an action for the obstruction of a street in front of the hotel of the plaintiff. I refer to this whole case as a fair presentation of the law on this question.

The latest reported case on this subject (*Broudy Kantor v. Levin*, 32 A. L. R. Annotated, page 249 [135 Va., 283; 116 S. E., 677]) recognizes this principle:

"The modern decisions—in this country, at least—almost if not quite unanimously are to the effect that the trial and appellate Courts have the authority to set aside such a verdict as to one or more defendants, and allow it to stand as to other defendant's (speaking as to a verdict against joint tort-feasors).

In addition to the cases cited above there are the following cases cited: *Albright v. McTighe* (C. C.), 49 F., 817. *Hayden v. Woods*, 16 Neb., 308; 20 N. W., 345. *Gross v. Scheel*, 67 Neb., 223; 93 N. W., 418. *Loving v. Com.*, 103

Ky., 534; 45 S. W., 773. *Seeley v. Chittenden*, 4 How. Prac. (N. Y.), 265. *Pecararo v. Halberg*, 246 Ill., 95; 92 N. E., 600. *Nashville Street Ry. Co. v. Gore*, 106 Tenn., 390; 61 S. W., 777, and other cases cited in 32 A. L. R., p. 252.

While the *Broudy case* turns on an erroneous instruction given the jury, yet the case recognizes the above-mentioned authorities all the way through.

Now, to recur to the rule laid down in *Sparrow v. Bromage:* Did Western Union Telegraph Company perform acts which would have rendered it liable if sued alone? It received a message clearly libelous on its face and one prohibited by its own rules. It published the said message by sending it over its wires so as to be heard, read, and understood by its agents, and finally published the said message to the daughter of the plaintiff. The testimony as set out in the record shows clearly that Western Union Telegraph Company, even if it had been sued alone, could have been held liable. Such being the case, the conclusion of *Sparrow v. Bromage* would be true that the Court may set aside the verdict against Gray and let the verdict against the telegraph company stand.

Further, I do not think that the refusal to charge the request set out in the sixth exception, constituted reversible error. Before a party can secure a reversal for failure to charge a specific request three things must appear: (1) The request must contain a sound proposition of law, and must not be misleading; (2) the request must be responsive to some issue made by the pleadings (*Richey v. Ry.*, 69 S. C., 387; 48 S. E., 285); and (3) there must be some foundation in the testimony (*Hicks v. Ry.*, 63 S. C., 559; 41 S. E., 753). The matter of charging the jury any particular proposition of law ought to be left to the sound discretion of the presiding Judge, unless the three requisites above mentioned concur.

This question is the same in principle as the reception of testimony in support of irrelevant allegations left in a pleading. It has been held in *Carter & Co. v. Kaufman,* 67 S. E., 456; 45 S. E., 1017, and in *Colvin v. Oil Co.,* 66 S. C., 61; 44 S. E., 380, that it is not error in a Judge to admit evidence in response to irrelevant allegations allowed to remain in a pleading, but it was further held in *Martin v. Railway,* 70 S. C., 8; 48 S. E., 616, and *Bromonia v. Drug Co.,* 78 S. C., 482; 59 S. E., 363, that the Judge has a right to exclude testimony in response to an irrelevant allegation allowed to remain in a pleading.

The case of *James v. Mickey,* 26 S. C., 270; 2 S. E., 130, seems to recognize the principle that many things in charging the jury are left to the discretion of the Judge. "Request to charge properly refused which confined the issues within too narrow limits." *Bickley v. Bank,* 39 S. C., 281; 17 S. E., 977; 39 Am. St. Rep., 721. "Where a request to charge ignored the question of waiver, there is no reversible error in refusing to charge it." *Curnow v. Ins. Co.,* 46 S. C., 79; 24 S. E., 74.

The request in this case was not sound for the reason that, even though a criminal offense is or is not charged, yet, if the words are calculated to expose plaintiff to "public hatred, contempt, or ridicule" (*McBride v. Ellis,* 9 Rich., 315), there would be a libel even though no crime was as a matter of fact charged. To use the words in *Bank v. Bickley* this request tried to narrow the issues raised by the pleadings and to mislead the jury that a criminal offense was charged, and that the case as made was confined to the criminal charge, when such was not the case—the theory of the complaint was not so much that plaintiff was charged with a crime as that plaintiff was exposed to "public hatred, ridicule and contempt," which under all the accepted definitions make a libel. As the request did not include the idea of "public ridicule, hatred, and contempt," it was only a partial statement of the law, and tended to mislead the jury from the

real issues as made by the pleadings. "Request eliminating question of carrier's negligence in furnishing safe place to unload horse and use of appliances properly refused, when these acts of negligence are alleged and reference to negligence in general terms in charge must be construed to refer to acts of negligence alleged." *Frasier v. Railway,* 73 S. C., 140; 52 S. E., 964. So this request was properly refused for the reason that it attempted to narrow the scope of the case and pleadings, and for the further reason that there was not anything in the pleadings to call for the giving of this instruction to the jury, and for the further reason that the witnesses for the defendant admitted on cross-examination that the meaning that plaintiff attached to the message and words was the meaning and sense in which they understood the word "traitor," and, such being the testimony from defendants' witnesses, I do not see how defendants could have been prejudiced by the refusal to submit to the jury an issue that witnesses for the defendant did not make. In other words, if plaintiff and defendants agree on the meaning of the word "traitor" (and the evidence shows that they do), why submit the meaning to the jury so as to attempt to show a meaning different from what the words plainly imply? The ordinary signification in popular parlance of the statement made is the vital question in each case, and it is clear under all the authorities that the word "traitor" is libelous *per se,* and there was no room for any such request to charge.

. Mr. Justice Watts: "This is an action for damages for libel growing out of the transmission and delivery of a telegraph message addressed to the respondent. The appellant, J. T. Gray, is the manager and executive in charge of the sending office at Columbia.

"The case was tried at the November, 1923, term of the Common Pleas Court for Lee County before Judge Memminger with a jury, resulting in a verdict for the plaintiff for $10,000 actual damages and $500 punitive damages.

"A motion for a new trial was made; and Judge Memminger made an order that, unless the plaintiff remitted one-half of the verdict for actual damages, a new trial should be granted.    The plaintiff in due season made the remission, and thus left the verdict of $5,000 actual damages and $500 punitive damages.

"After entry of judgment the defendants gave due written notice of intention to appeal, and now bring the case before this Court upon numerous exceptions for review.

"The message read, 'Go on, you traitor to your county and your State,' and was signed anonymously, 'Statesman.'

"The appellant, J. T. Gray, was the manager and executive officer in charge of the Columbia office.    He admitted on trial that he typewrote the message in question.    He further admitted that he had the message transmitted from Columbia through the Charleston office to the Bishopville office, and there delivered to Miss Myrtle James, the office assistant of Capt. James; Miss James having authority, as was well known to the telegraph company, to receive and open messages coming to her father.    He still further admitted that he well understood the scurrilous and libelous nature of the message, and the meaning of the language used; and that, notwithstanding a rule of the telegraph company well known to him, forbidding the reception and transmission of libelous messages such as this, he typewrote the message and had it transmitted.

"Mr. Baker, the manager of the Bishopville office, testified that he was surprised at the transmission of the message, that he hesitated to deliver it, and that it would not have been sent by him, if offered to his office for transmission.

"It appears that the message passed through the hands of a number of operators and clerks between Columbia and Bishopville, all of whom had an opportunity to read it.

"The message was delivered by the manager of the Bishopville office, through his messenger boy, to Miss Myrtle James, the daughter and office assistant of her father, Capt. W. A. James, to whom the message was addressed. Miss James read the message and was greatly shocked and perturbed."

The exceptions are sixteen in number, and may be divided: Refusal to direct a verdict for the defendants upon the whole issue; refusal to direct a verdict for punitive damages; refusal to charge certain propositions of law as asked for by the defendants; charging erroneous propositions of law; and refusal to grant a new trial.

Under the evidence in the case it would have been error to have directed a verdict as asked for. The message was received and transmitted by the defendant; it was libelous *per se;* Gray, the manager typewrote it; it was signed not by an individual name but signed "Statesman"; Gray did not know his name or who he was. Gray and others of the telegraph company palpably violated the rules of the company.

The message was published; it was delivered to Miss Myrtle James and opened by her.

25 Cyc., 369, says:

"The writing of a message and the delivery of it to the telegraph company for transmission to the plaintiff is a publication by the writer. So where a libelous message is delivered in writing to one operator of a telegraph company, and is by him forwarded over the company's wires to the receiving operator, to be by him reduced to writing and delivered to the plaintiff, such forwarding constitutes a publication by the company, and the fact that the message was transmitted over the wires by sound, does not render the publication oral instead of written."

See *Peterson v. Western Union Telegraph Co.,* 72 Minn., 41; 74 N. W., 1022; 40 L. R. A., 661; 71 Am. St. Rep., 461. *McCoombs v. Tuttle,* 5 Blackf. (Ind), 431. *Adams*

*v. Lawson,* 17 Grat. (Va.), 250; 94 Am. Dec., 455. *Peterson v. Western Union Tel. Co.,* 65 Minn., 18; 67 N. W., 646; 33 L. R. A., 302.

A corporation is liable for slander under the same circumstances as would make it liable for any other tort. *Hypes v. Southern Ry.,* 82 S. C., 315; 64 S. E., 395; 21 L. R. A. (N. S.), 873; 17 Ann. Cas., 620. *Courtney v. Express Co.,* 120 S. C., 514; 113 S. E., 332; 24 A. L. R., 128. *Switzer v. Express Co.,* 119 S. C., 248; 112 S. E., 110; 26 A. L. R., 819. A telegraph company is liable for both actual and punitive damages for transmitting a message libelous upon its face. *Peterson v. Western Union Tel. Co.,* 72 Minn., 441; 74 N. W., 1022; 40 L. R. A., 661; 71 Am. St. Rep., 461. *Peterson v. Western Union Tel. Co.,* 75 Minn., 368; 77 N. W., 985; 43 L. R. A., 581; 74 Am. St. Rep., 502.

As to the request to charge, Judge Memminger said this in reference thereto:

"Now, there are a great number of requests to charge, gentlemen, put up on the part of the telegraph company, and it would take me some half hour to read them, and the Supreme Court has stated when these are put up to the Judge, that is done in good faith, and the Judge must charge them, but, having explained those requests fully, I don't intend to read them; so we will not go over them, gentlemen. I have charged on all those points; passed on them sufficiently for you to decide the case."

The Judge is not required to charge a request as worded; he can charge a principle of law in his own language. I think that his Honor fully by his charge in his own language declared the law applicable to this case, and I see nothing prejudicial to the defendants as complained of by the exceptions.

I think that his Honor was in error in stating to the jury:

"I don't see how you can possibly find a verdict for the plaintiff except against both defendants."

I think on this the appellant, J. T. Gray, should have a new trial. There was evidence of negligence on the part of other servants of the Western Union Telegraph Company sufficient to carry it to the jury for their determination. There was evidence that more than one servant violated the rules of the company.

It is surprising that the manager, Gray, should have done as he admits he did.

Exceptions complaining that his Honor should have granted a new trial should be overruled; that was a matter for his Honor's discretion. He cut the verdict for actual damages in half, and as the verdict now stands it cannot be said to be excessive. All exceptions as to the Western Union Telegraph Company should be overruled.

All exceptions as to Gray should be overruled, except the one mentioned as to which he is entitled to a new trial.

Judgment as to Western Union Telegraph Company should be affirmed; as to J. T. Gray a new trial should be granted.

Mr. Acting Associate Justice Ramage concurs.

Messrs. Justices Cothran and Marion and Mr. Acting Associate Justice Greene concur in part.

Mr. Chief Justice Gary and Mr. Justice Fraser did not participate.