SAMUEL ROGERS *vs.* POSTAL TELEGRAPH CABLE CO. OF MASSACHUSETTS.

Suffolk.    November 14, 1928. — January 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Actionable Tort. Telegraph Company. Libel. Practice, Civil,* Exceptions: whether error harmful.

At the trial of an action of tort against a telegraph company by a married man, the addressee of a telegram directed to his residence with the order "Dont Phone," and containing the message, "Are you still here .

come see me need some money. Rose," it appeared that an unknown woman came into an office of the defendant and dictated the telegram to the defendant's manager, telling him that she wanted it delivered personally and paying extra for such service; that the telegram was forwarded to another office of the defendant and thence delivered to the plaintiff's residence, being left under the door, where it was found by the plaintiff's son in the plaintiff's absence and given by the son to the plaintiff's wife. Certain rules of the defendant relating to the acceptance, forwarding and delivery of telegrams were introduced in evidence. The plaintiff testified that the telegram "caused quite a little trouble at his home" on his return the next day. The trial judge ordered a verdict for the defendant. *Held,* that

(1) There was nothing in the telegram to show a breach of duty on the part of the defendant or wrong to the plaintiff in the acceptance and forwarding of the telegram by the defendant's employees;

(2) The method of accepting and delivering the telegram was proper;

(3) The telegram was not a libel of the plaintiff;

(4) Even if there were violations of the defendant's rules by its employees, it did not appear that any damage was caused to the plaintiff thereby;

(5) No prejudicial error appeared in the exclusion of testimony by the plaintiff as to a conversation between him and the defendant's manager, and a call by him at the defendant's main office to see the superintendent, especially where the substance of such testimony subsequently was admitted in evidence;

(6) The verdict properly was ordered for the defendant.

TORT for damage caused to the plaintiff by a telegram received and forwarded to the plaintiff by the defendant. Writ dated August 5, 1925.

The declaration contained allegations of libel, of negligence, and of intentional and unjustifiable injury done by the defendant to the plaintiff. Material evidence at the trial in the Superior Court before *Flynn,* J., is stated in the opinion. Certain rules of the defendant relating to the acceptance, forwarding and delivery of telegrams were introduced in evidence by the plaintiff. Subject to the plaintiff's exception, the judge ordered struck out testimony by the plaintiff as to a conversation with the defendant's branch manager, in which the plaintiff asked the manager why he had told the plaintiff's wife that it was a woman who sent the telegram, and the manager refused to answer any questions and referred the plaintiff to the main office of the defendant; and further testimony by the plaintiff that he

went to the main office and saw "the superintendent of the defendant company, supposed to be the head there of their office." Both the branch manager and the superintendent later testified concerning conversations with the plaintiff. The judge also excluded evidence by the plaintiff as to the damage which he suffered.

At the close of the plaintiff's evidence, the judge ordered a verdict for the defendant on each count of the declaration; and the plaintiff alleged exceptions, which, after the death of *Flynn,* J., were allowed by *McLaughlin,* J.

*J. L. Sheehan,* for the plaintiff.

*G. K. Gardner,* for the defendant.

CARROLL, J.   This is an action of tort in six counts. There was a directed verdict for the defendant to which the plaintiff excepted.   He also excepted to the exclusion of certain evidence.

The defendant's manager of a branch office, called by the plaintiff, testified that a woman whom he did not know came to the defendant's office, and at her dictation he wrote this message: "Boston Mass Mar 10 filed 12p   Samuel Rogers 31 Waumbeck St. Dont Phone Roxbury   Are you still here come see me need some money.   Rose"; that she did not give her name or address; that she told him "to put in the telegram 'Dont Phone'" and told him she wanted it delivered personally; that she paid him for the telegram and twenty cents extra for delivery; that the message was sent to the defendant's Roxbury office, and from there delivered, being left under the door of the plaintiff's house.

The plaintiff's son found the telegram under the door the same day and gave it to his mother.   The plaintiff returned home the next day and his wife gave him the telegram.   He testified that "the telegram had caused quite a little trouble at his home"; that it could be readily imagined the kind of reception he received when he returned to his home.   His son testified that while he was reading the message his mother demanded it, and when his father returned his mother showed the plaintiff the telegram and demanded an explanation.

The defendant cannot be held liable in this action of tort unless it failed in the performance of some duty it owed the

plaintiff and damage followed as a natural and probable result.   *McDonald* v. *Snelling,* 14 Allen, 290.

The defendant did no wrong to the plaintiff in accepting the telegram for transmission.   When the woman who called herself Rose dictated the message and asked to have it transmitted, the manager was not bound to inquire who she was or what her relation with the plaintiff was.   He could infer that the request for money was a legitimate one; he was not required to determine that the request arose from a bad motive.   The plaintiff's wife may have been suspicious, but the words of the telegram on their face were innocent. "Rose" may have had a perfectly legal claim against the plaintiff; he may have been indebted to her; her suggestion to him to call on her did not necessarily mean that the relations between them were unlawful.   From all that was known to the manager she might be the plaintiff's wife, sister, daughter or other relative.   The manager was not obliged to examine her as to the details of the message.

The manager could take the telegram at dictation.   The defendant assumed no greater responsibility than it would if the message had been written by the sender, and it was not necessary for the manager to learn the sender's address.

There was no breach of duty by the defendant or wrong done the plaintiff in permitting the telegram to come into his wife's possession.   The telegram was left under the door at the plaintiff's house, and although this was in violation of the defendant's rule and an improper delivery, the telegram was brought to the plaintiff's knowledge as soon as possible, and he was not injured by the method of delivery. It is not, in our opinion, a wrong to the person to whom a telegram is addressed to deliver it under ordinary circumstances at his home if that is the address given, or to the person who is in charge of the house or office.   There may be special conditions which call for a personal delivery, but these conditions do not exist in this case.   The Roxbury office could make the same assumption of innocence as the manager could make.   There was no notice that the telegram called for any greater degree of privacy than is customary with telegrams generally when delivered to people

at their homes. This conclusion is not affected by the fact that the sender of the message requested the manager "to put in the telegram 'Dont Phone,' and she told him she wanted it delivered personally." The words "Dont Phone" mean that the sender of the message desired that the plaintiff should receive a written message, free from the risks of error, delay, and failure to deliver, involved in oral transmission; she asked for a personal delivery, but this did not mean that the message was not to be delivered at the plaintiff's home or was to be kept secret from his wife and son. We do not think that the defendant entered into such an agreement or that the evidence bears this interpretation. Moreover, the sender of the message was not the plaintiff's agent.

The telegram was not a libel as the plaintiff contends. The defendant was not responsible for the meaning given to the message by the plaintiff or his wife; such a meaning is not a reasonable one or one which the defendant could reasonably have foreseen. See *Snell* v. *Snow*, 13 Met. 278; *R. J. Todd Co.* v. *Bradstreet Co.* 253 Mass. 138. As was said in *Wheelock* v. *Postal Telegraph Cable Co.* 197 Mass. 119, at page 126, "The damages to be recovered are only such as are the natural and proximate result of its conduct, and such as reasonably might have been expected to be within the contemplation of the parties when the contract was entered into as the probable result of a breach of it." The defendant had no cause to believe that the sender of the message was making an improper claim on the plaintiff or that her relations with him were unlawful. An action founded on such an inference must fail.

The plaintiff relies on the violation of the rules of the defendant. We are unable to see how this fact helps him. No damage resulted from this violation, even if the rules were not observed. The rule in *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476, regarding the violation of regulations for the safety of third persons, is not to be extended to the case at bar.

Certain testimony was struck out against the plaintiff's exception; we do not think it necessary to discuss the admissibility of this testimony. Assuming, but without de-

ciding, that the evidence was competent, its exclusion did not affect the result. There was no prejudicial error in the rulings made by the judge. A verdict for the defendant was directed properly.

*Exceptions overruled.*