CALVIN W. KLEIN, Respondent, *v.* WESTERN UNION TELEGRAPH COMPANY, Appellant.

First Department, June 29, 1939.

*John H. Waters* of counsel [*Francis R. Stark* and *Denis O'L. Cohalan*, attorneys], for the appellant.

*Nathaniel Phillips* of counsel [*S. S. Goldsmith* and *Charles Rabbins* with him on the brief], for the respondent.

O'MALLEY, J. The question presented is what liability, if any, attaches to the defendant for having received, transmitted and delivered to nine separate addressees a telegram concerning the plaintiff which, as between the sender and the plaintiff, is concededly libelous *per se*.

The message received over the phone read as follows:

" The officers do not refuse to remove picket lines from the United Stores STOP The membership flatly refuse to be sold out to Kline and his gang for a starving wage STOP They defy him to prove that his list and membership is available for any labor organization STOP They defy William Lehman whom they definitely positively accuse of being on United payroll STOP Bring your General Executive Board here to find out the real facts instead of procuring votes by proxy STOP They unanimously vote this as a filthy sellout STOP Therefore the organization as a whole demands that you Mr. Hesketh take these picket lines off yourself where these poor devils have been pounding the sidewalks two months to one year striving to better conditions to a living wage instead of being under the yoke of labor fighter Kline who was responsible for the murder of our late brother and officer Borson STOP Incidentally we haven't any protest on record from the International Union on this case

" (signed) Entire Membership of Local 302 New York."

This message was addressed to ten different people and as many causes of action were pleaded in the complaint, each predicated on a separate message. One of such causes was withdrawn on the trial and the case went to the jury with respect to the remaining nine.

The nature and character of this message undoubtedly was brought home to the defendant for the reason that it was not only read by the agent receiving it but, by virtue of the number of addressees and the question as to the accuracy of one address, it was called to the attention of two of the defendant's supervisors.

Two affirmative defenses were pleaded. The first was to the effect that the defendant was subject to the Transportation Corporations Law of New York with respect to intrastate messages and to the Federal Communications Act of 1934 as to interstate messages; that under such laws it is obligated to receive messages from any person on payment of the usual charges; that this particular message was received in the ordinary course of defendant's business and transmitted and delivered without intent to injure; that defendant as not actuated by malice and that messages delivered to the defendant are privileged with respect to it.

The second defense was to the effect that the sender was a member of an international labor union and that the message with respect to the sender and the addressees, each of whom was an officer of the international union and interested in the subject-matter, was a privileged communication and one which the defendant was obliged by law to receive, transmit and deliver.

At the trial the defendant took the position that the message was accepted, transmitted and delivered in the ordinary course of business; that there was nothing on its face to indicate its falsity or non-privilege; that it contained merely statements of fact, couched in decent language, relating to labor matters, and that, therefore, the message was privileged; furthermore, that under the circumstances the defendant was obligated to accept and transmit it on payment of proper charges and that there was no malicious publication.

The trial court, however, dismissed the affirmative defenses, overruled the foregoing contentions and submitted to the jury only the questions of (1) the identity of the " Kline " described in the message and (2) the amount of damages, giving the jury in addition the right to pass upon punitive damages.

Plaintiff's proof was to the effect that for some twelve years he had been secretary of a co-operative body of cafeteria owners known as United Restaurant Owners Association, Inc., and that these restaurant owners had been experiencing labor trouble with various unions. As a result of negotiations, wherein plaintiff with another represented the association and one Kearney represented the international union, a settlement agreement was reached which in part provided for the removal of pickets from business premises operated by members of the association. Purportedly the telegram was sent by a local union to officers of the international body.

Plaintiff contended that by delivery of the telegram the international refused to carry out the settlement agreement and particularly refused to remove the pickets, thus causing plaintiff's damage in that he was defeated for re-election as secretary of his association; that some twenty-five or thirty members withdrew from his association which subsequently was forced into bankruptcy with the result that plaintiff was prevented from collecting a claim of $6,300 for past due wages.

Some of the addressees were within this State; others were without. Defendant, therefore, was subject both to Federal and State laws. The Communications Act of 1934, section 202, subdivision (a), (U. S. Code, tit. 47, § 202, subd. [a]), creating a Federal Communications Commission, makes it unlawful for any common carrier to discriminate with respect to its services, directly or indirectly, or to subject any person to undue or unreasonable prejudice or disadvantage. Section 501 of the same act provides a fine of $10,000 or two years in jail, or both, for willfully failing to do anything required by the act for which no penalty other than a forfeiture is provided. So, too, a provision of like import respecting discrimination is found in section 28 of the Transportation Corporations Law of New York.

At the outset, therefore, it is to be observed that this defendant is placed in a precarious position with respect to its refusal to accept, transmit and deliver messages proffered to it with a tender of the proper charges. Cases are not lacking where it has been mulcted for refusing. If the defendant at its peril is required to censor messages which contain statements of fact or innuendo about a third party of the character of the messages here sent, it would subject itself to a possible suit on the part of the sender, either by reason of its refusal to accept or for the delay occasioned by its investigation. Celerity of communication, which is the basis of defendant's business, would thus be seriously hampered.

It is true that the defendant itself has a rule for employees which provides that they should not accept a message " containing profane, obscene or libelous language." By the same rule they are instructed in cases of doubt to refer the matter to their superior. It is stated, however, that this particular rule was adopted because of the intimation in *Nye* v. *Western Union Telegraph Co.* (104 Fed. 628) that the company might be liable if suit were brought by the addressee of a libelous message which from its contents plainly indicated the sole purpose was to defame such addressee. That question is not here presented and we, therefore, do not pass upon it.

So far as publication to employees of the defendant carrier is concerned it is limited and restricted. A message is handled by but a few employees who themselves are prohibited by statutes against divulging any information received in the course of their employment and who in most instances have no personal acquaintance with the party allegedly libeled.

There has been called to our attention but one case in which a recovery was had as against the carrier for a message addressed and delivered to a third party. (*Paton* v. *Great Northwestern Telegraph Co. of Canada*, 141 Minn. 430; 170 N. W. 511.) In that case, however, it is to be noted that there was proof of bad feeling between defendant's operator employed by a railroad and the addressee employed by the same railroad.

Defendant is a public service corporation licensed to perform a service connected with the public interest. It operates under statutes and rules of law subjecting it to penalties and damages for discrimination and negligent transmission of messages. In such circumstances individual rights to some extent must give way to the general good. We are of opinion that ordinarily such a company, in accepting, transmitting and delivering messages, is entitled to a qualified privilege. This rebuts any presumption of malice from the fact that the message is libelous *per se* as between sender

and the party mentioned therein, and, in order to justify a recovery, the party libeled must furnish evidence of actual or express malice or bad faith on the part of the carrier. (*Flynn* v. *Western Union Telegraph Co.*, 199 Wis. 124; 225 N. W. 742; *Western Union Telegraph Co.* v. *Brown*, 294 Fed. 167; *Grisham* v. *Western Union Telegraph Co.*, 238 Mo. 480; 142 S. W. 271; *Nye* v. *Western Union Telegraph Co.*, 104 Fed. 628.)

It is to be borne in mind that the question here is not whether the defendant might have refused to accept, transmit and deliver with impunity or could have made an investigation, but rather, as first above stated, whether, having accepted, it is liable to the plaintiff.

Here there was nothing to show that the statements were not true or that as between sender and addressees it was not a privileged communication. Upon the evidence we are of opinion that as a matter of law any implied malice was rebutted and that the verdict of the jury, so far as it is a finding that defendant did not act in good faith, was contrary to the weight of the evidence.

In this case, moreover, while not obliged, we think, so to do, defendant, through one of its supervisors, communicated by telephone with the sender at its regularly listed number in the telephone directory. By this there was a check even as to the sender, which it has been held is an act of defendant not required. (*Rogers* v. *Postal Telegraph Cable Co. of Massachusetts*, 265 Mass. 544.)

The motion made on the judge's minutes to set aside the verdict and for a new trial should, therefore, have been granted. Due to a mistake as to procedure, defendant failed to take timely appeal from the judgment. However, its motion to set aside the verdict was timely made and its appeal from the order entered on the denial duly taken. Under such circumstances we may reverse and grant the motion, but may not dismiss the complaint as we would have done had the appeal been from the judgment.

Since a new trial is to be ordered for the reasons indicated, we deem it advisable to point out some of the errors committed by the trial judge in the charge. The court refused to charge as requested that the jury might find nominal damages. This would seem to be error. (*Amory* v. *Vreeland*, 125 App. Div. 850.) The same is true with respect to the charge that there was no evidence that the telegrams were privileged as between the sender and the addressees. As already pointed out, there was evidence that a local union sent the telegrams to officials of its international respecting a matter of common interest, to wit, the labor trouble with the restaurant owners' association. The court also charged that the defendant was under no legal duty to accept any message containing libelous language. This in effect charged the jury that defendant was

liable as a matter of law if it found merely that the " Kline " mentioned in the message was the plaintiff.

It follows, therefore, that the order so far as appealed from should be reversed, the motion to vacate the verdict granted and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Order so far as appealed from unanimously reversed, the motion to vacate the verdict granted and a new trial ordered, with costs to the appellant to abide the event.