**WESTERN UNION TELEGRAPH CO.**
***v.* LESESNE.**

No. 6044.

United States Court of Appeals
Fourth Circuit.

Argued April 14, 1950.

Decided May 15, 1950.

See also 83 F.Supp. 918.

136

E. W. Mullins, Columbia, S. C. (Nelson, Mullins & Greer, Columbia, S. C., and John H. Waters, New York City, on the brief), for appellant.

C. T. Graydon and Yancey A. McLeod, Columbia, S. C. (McLeod & Singletary, Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Western Union Telegraph Company appeals from a judgment for $2,000 against it in favor of Thomas P. Lesesne in an action for libel based upon a telegram containing statements in regard to the plaintiff. The message was delivered to the Telegraph Company by H. G. Willingham at Columbia, South Carolina, on October 27, 1946, and was transmitted that day by the company at Columbia by teletype to the addressee, Dr. James A. Hayne, who was an official of the State Board of Health with which the plaintiff was also officially connected.

The telegram was the basis of the second cause of action in the complaint. The first cause of action therein was based on a telegram from Willingham to Lesesne containing statements in respect to the latter which was filed with the company on the evening of October 26, 1946, and was delivered to his residence in Columbia the next day. The suit was brought against Willingham and the Telegraph Company in the State court and was removed by the company to the Federal court on the ground that it involved a separable controversy as to the company. It was remanded without objection to the State court as to Willingham. The verdict on the first cause of action was for the defendant, but on motion this verdict was set aside in the District Court where the case now awaits a new trial. The specific questions for review on this appeal from the verdict on the second cause of action was raised by the defendant on motions for a directed verdict and for a judgment n. o. v. They involve the contention that the telegram to Hayne was a privileged communication, and also the contention that the court erroneously admitted in evidence certain additional telegrams sent by Willingham to other persons which did not relate to the plaintiff.

The first telegram, which was addressed to the plaintiff, was delivered to and read by his wife at his residence and was as follows: "Although you are an administrative Assistant of the South Carolina State Board of Health and a new deal tick that does not give you license to run through the streets of Columbia and kill women turn over in bed and regret your wrong doings. Although you have tried to kill the case with political pull we are determined to pull you out into the spot light." The second telegram which was addressed to Dr. Hayne and transmitted to the State Board of Health and there delivered to the Director thereof was as follows: "You nor no other Democratic politician is going to be big enough to fix the death that occurred at Wheat and Wood Streets caused by your administrative assistant Thomas Lesesne. I have reported this to the civil rights section of the United States Dept. of Justice. After receiving cover all tactics from highway patrol and Columbia police dept."

We consider first the contention that the delivery of the Hayne telegram by the company was not actionable because as to the company the communication was privileged under the rule which is stated in the Restatement of the Law of Torts, Vol. 3, § 612, as follows: "A public utility whose duty it is to transmit messages for the public is privileged to transmit a message although it is obviously defamatory, unless the agents who transmit it know or have reason to know that the sender is not privileged to send it."

The District Judge approved this statement of the rule and without objection, incorporated it in his charge to the jury; and he also stated the converse of the proposition by instructing the jury that the company was liable for transmitting the defamatory message if it knew or should have known that the sender of the telegram was not acting in the exercise of a legitimate or privileged interest but in bad

faith for the purpose of defaming another.[1] We are in accord with this view of the law.

The Telegraph Company is subject to the Federal Communication Act of 1934, 47 U.S.C.A. § 151 et seq., and is forbidden to make any unjust or unreasonable discrimination in charges or services in connection with the communication service, or to subject any person to any undue or unreasonable prejudice or disadvantage, § 202(a); and any person who does any act prohibited by the statute is subject to criminal penalties, § 501. In the instant case, the company is also subject to the provisions of Section 8548 of the South Carolina Code of 1942 which requires every Telegraph Company in the State to receive and transmit messages with impartiality and good faith and diligence, under penalty of $100 to be recovered either by the sender or receiver of the message.

The duty imposed upon a telegraph company by these statutes, as well as by common law, requires it to forward messages for any who requests the service; and it has been pointed out in a number of decisions that the large number of messages which a telegraph company is required to transmit, the speed expected in the transmission of the messages, the number and character of the minor employees needed in the business, and the difficulty of the legal questions involved, make it impracticable for the company to withhold or deliver messages until it can make an investigation as to their truth or privileged character. Hence it is only when the company has knowledge or reason to know that the messages are not privileged that it becomes liable for libelous matter contained therein. The rule is in effect an extension of the law of privilege which is based upon the public policy that the advantage to the public to be gained by the transmission of the defamatory matter may outweigh the harm to the reputation of others. See O'Brien v. Western Union, 1 Cir., 113 F.2d 539; Nye v. Western Union, C.C.Minn., 104 F. 628; Western Union v. Brown, 8

Cir., 294 F. 167, 168; Von Meysenbug v. Western Union D.C.S.D.Fla., 54 F.Supp. 100; Klein v. Western Union, 257 App. Div. 336, 13 N.Y.S.2d 441; Id. 281 N.Y. 831, 24 N.E.2d 492; Flynn v. Reinke, 199 Wis. 124, 225 N.W. 742; Rogers v. Postal Telegraph Cable Co., 265 Mass. 544, 164 N.E. 463; see also, Paton v. Great Northwestern Telegraph Co., 141 Minn. 430, 170 N.W. 511; Peterson v. Western Union, 65 Minn. 18, 67 N.W. 646, 33 L.R.A. 302, Id., 75 Minn. 368, 77 N.W. 985, 43 L.R.A. 581, 74 Am.St.Rep. 502; James v. Western Union, 130 S.C. 533, 126 S.E. 653.

In considering whether the defendant's agents in the pending case knew or had reason to know that Willingham was not privileged to send the message to Dr. Hayne in regard to Lesesne, we start with the facts that Dr. Hayne had been the Director of the State Board of Health and was Director of Health Education in that organization at the time of the message, and that Lesesne occupied the position of Assistant State Registrar in charge of the Department of Vital Statistics at the head of twenty-six employees. The telegram was delivered to Dr. Hayne and then in the ordinary course of business to Dr. B. F. Wyman, the Director of the Board. It does not appear what knowledge the agents of the company had as to the official organization of the Board of Health, but the two telegrams, one to Lesesne and the other to Hayne, clearly indicated that Lesesne was connected with the Board in an administrative capacity as an assistant to Hayne, and that Lesesne had caused the death of a woman on the streets of Columbia.

█ It is well settled that a defamatory communication from a private citizen to a public official in respect to the conduct of a subordinate employee, which throws light upon his fitness for the place, may be conditionally privileged. There must be reasonable ground for the belief that the facts alleged affect a public interest of sufficient importance, and that public interest requires the communication to be made,

---

1. A regulation of the defendant company admonishes its employees to refuse a message containing profane, obscene or libellous language and in case of doubt to refer the matter to a superior for instructions.

and that the public official to whom it is addressed has the power to act if the charge is true; and the privilege may extend to the criticism of the private conduct of one engaged in public activities insofar as this conduct affects his fitness to perform his public duties. 3 Restatement of Torts, § 598, §·606(2) Comment (e). Black v. State Co., 93 S.C. 467, 77 S.E. 51, Ann.Cas.1914C, 989; Newell on Slander and Libel, 4th Ed., §§ 390, 421.

It is equally well settled that the privilege of the publisher of defamatory matter in such a situation may be lost if it is abused, as when he does not act for the purpose of protecting the public interest, but from spite or ill will. 3 Restatement of Torts, § 603, Comment (a).

■ When the telegrams in suit are examined with these rules in mind, they seem to give rise to conflicting inferences. On the one hand it is clear that the sender desired to bring to the attention of responsible officials the reprehensible conduct of a subordinate of so grave a character as to warrant an inquiry into his fitness for further public service; and on the other hand, the abusive and insulting epithets applied to the plaintiff and the charge that he and his superior were endeavoring to suppress the inquiry into his wrongdoing through improper political influence might well give rise to the inference that the sender of the telegram was moved by ill will rather than a sense of public duty. Hence it cannot be said that the evidence was of such a character as to justify only one conclusion, and it follows that the District Judge did not err in refusing to direct a verdict for the defendant and in leaving it to the jury to determine whether the agents of the Telegraph Company, who received and transmitted the messages, had reason to know from the nature of their contents that they were not privileged but were sent in bad faith to defame the plaintiff.

■ The second question, which involves the admissibility in evidence of defamatory telegrams not mentioned in the complaint, is of importance because of the effect of the admission of this evidence upon the verdict of the jury. The tele-grams are of two classes, those which related to the misconduct of the plaintiff referred to in the telegrams in suit, and those which related to other persons and other matters and had nothing to do with the plaintiff. They were admitted by the court as tending to show that Willingham was a person prone to make and publish defamatory statements, and that the company therefore had some reason to believe that the messages to Lesesne and Hayne were not privileged. This reason, which is the only one suggested, seems to limit the reception in evidence of other messages to those received before or at the same time as the telegrams covered by the complaint, since it is obvious that subsequent messages could not affect the knowledge of the company at the crucial moment.

First, there was mention in evidence of a telegram sent by Willingham to the Mayor of Columbia who was ex officio head of the police force of the city. This message was not produced in evidence. It had been destroyed in accordance with a company rule six months after it was filed, and the pending suit was not brought until eighteen months later. The mayor was not called as a witness. Willingham merely stated that the telegram was sent at the same time as the others and was of similar import, and charged Lesesne with reckless homicide. Another telegram was sent by Willingham to the coroner who was to conduct the inquest upon the death of the woman whom the plaintiff had killed. This telegram stated in effect that the sender knew that the coroner would do his duty to prevent a drunken murderer, in the person of Lesesne, from running the streets of Columbia. It is not entirely clear whether this telegram was sent at or before the others, since Willingham had no definite recollection and the coroner could only say that it came in October and before the inquest on November 4, 1946. Assuming that the wires to the mayor and the coroner were sent contemporaneously with the messages sued upon, we are of opinion that they were admissible in evidence as bearing on the knowledge of the company; and it would not seem that they were prejudicial to the company since they tended to show that Wil-

lingham was asking public officials to do their duty in the enforcement of the law.

Three other telegrams, however, were introduced which in our opinion should have been rejected since they had nothing whatever to do with the plaintiff or his suit against the company. The first in order of time was sent on September 21, 1946, five weeks before the telegrams in suit, to the sheriff of Richland County, South Carolina, asking him to apprehend a lawyer who was described in the message as a gangster attorney. The second telegram was sent on October 22, 1946, five days before the message to Hayne, to the attorney who appeared for the plaintiff in this case in the District Court and on this appeal. It used offensive and insulting language with respect to the attorney but it did not refer to the plaintiff in any way and could have had no relation to the present cause of action which did not arise until five days later. The third telegram was sent to the same attorney on September 4, 1947, ten months after the telegrams in suit. It was full of insulting, offensive and defamatory statements in regard to the same attorney and to other distinguished and respected citizens of South Carolina, and accused the most widely known of them of treason to his state.

None of these messages should have been received in evidence since they had no bearing whatsoever on the case. The reason given by the court for their admission could not have possibly applied to the telegram of September 19, 1947, since such knowledge of the character of the sender as it conveyed to the reader was not available to the company on October 27, 1946. The argument for the admission of the telegrams sent thirty-five and five days respectively before the crucial date is but little stronger. The reasons which support the rule of privilege applicable to telegraph companies apply in some measure to this phase of the case. The multitude of daily messages, the large number of agents necessarily employed to handle them, and the need for swift service make it impracticable for the company to keep in mind, whenever a message is filed for transmission, the

contents of telegrams sent days and weeks before. Of equal or greater importance is the fact that in defending such a suit as the case at bar the company does not come into court to defend its actions in disconnected transactions which have no common basis of fact; and to compel it to do so on short notice would not only be unjust but would require the jury to enter into an examination of the circumstances surrounding each irrelevant message and distract them from the consideration of the merits of the controversy they were sworn to try.

The judgment of the District Court is reversed and the case remanded for new trial.

Reversed and remanded.