35 N.Y.2d 746 (1974)
Leroy Anderson, Respondent,
v.
New York Telephone Company, Appellant.
Court of Appeals of the State of New York.
Argued September 11, 1974.
Decided October 23, 1974.
George E. Ashley, Charles Ryan Desmond, Martin F. Idzik and John C. Spitzmiller for appellant.
A. E. Schulgasser for respondent.
Concur: Chief Judge BREITEL and Judges GABRIELLI, JONES, WACHTLER, RABIN and STEVENS. Judge GABRIELLI concurs in the following opinion in which Judge WACHTLER concurs. Taking no part: Judge JASEN.
*748 Order reversed, without costs, on the dissenting opinion by Mr. Justice G. ROBERT WITMER at the Appellate Division and the judgment of Supreme Court, Erie County, reinstated.
GABRIELLI, J. (concurring).
We concur in the result reinstating the judgment dismissing the complaints; but since it is abundantly clear that defendant did not "publish" the defamatory material complained of, we do not deem it necessary or prudent to rest our decision on grounds broader than that. In other words, if as we believe, there was no publication by defendant, then there is no need even to consider the further privilege and constitutional points also relied upon by the dissent below.
The facts may be quickly summarized. Plaintiff had been appointed Presiding Bishop of the Church of God in Christ in Western New York with 65 churches in his jurisdiction. In 1969 Donald L. Jackson, president of the Donald L. Jackson Foundation and sponsor of the organization "Let Freedom Ring", broadcast every week over station WWOL in Buffalo. During the course of these programs Jackson urged his listeners to call two telephone numbers. A person calling these numbers would hear accusations against plaintiff involving him in all sorts of scurrilous activities not the least of which was illegitimately fathering children by women and girls in the church.
Jackson's telephones were attached to equipment leased to Jackson by defendant. This equipment contained the recorded messages which would automatically play upon activation of the telephone by a caller.
When plaintiff heard the recording he went to the Department of Social Services in Erie County and received from authorities a letter stating that there was no record there of plaintiff as a putative father. Plaintiff thereupon went to defendant's local office in Buffalo and conferred with the person *749 in charge who, after dialing Jackson's number and listening to the message, referred plaintiff to the area manager. Upon hearing the recorded message and reading the letter from the Department of Social Services, the area manager indicated he would attempt to get Jackson to terminate the recordings. The messages continued, however, and Jackson added further allegations against plaintiff in subsequent messages.
Plaintiff, unable to secure an injunction and unsuccessful after conferences with defendant's attorneys, commenced this action in defamation. Defendant moved pursuant to CPLR 3211 (subd. [a], par. 7) for dismissal of the complaint on the ground the pleading failed to state a cause of action. Special Term, dealing only with the question of qualified privilege, ruled that a fact question existed. The case then went to trial at the conclusion of which the court granted judgment for defendant specifically on the ground "[t]hat I find that the New York Telephone Company did not publish this scandalous material."
The majority at the Appellate Division, in reversing and ordering a new trial, discussed the point involving whether defendant had a qualified privilege to allow the messages to continue after notice of their content and concluded that defendant's nonaction amounted to reckless disregard of whether the messages were false or not so as to overcome any privilege that might otherwise be enjoyed. The dissenters could not locate the duty thus imposed by the majority and further found that any action taken by defendant summarily to stop the messages would violate the subscriber's First and Fourteenth Amendment protections in that service would be curtailed in violation of the subscriber's right to a hearing and review. Initially, the dissent takes up the point concerning publication and states that, unlike the telegraph company, the employees of which actively aid in the transmission of messages (Klein v. Western Union Tel. Co., 257 App. Div. 336, 339-340, appeal withdrawn 281 N.Y. 831; Smith, Liability of a Telegraph Company for Transmitting a Defamatory Message, 20 Col. L. Rev. 30, 33-50), the telephone company's role is merely passive and no different from any company which leases equipment to another for the latter's use (42 A D 2d 151, 162-163).[1]
*750 We agree with this point and because we do, we find it unnecessary to deal with the other points taken up in the dissent. In order to be deemed to have published a libel a defendant must have had a direct hand in disseminating the material whether authored by another, or not. We would limit to media of communications involving the editorial or at least participatory function (newspapers, magazines, radio, television and telegraph) the dictum, "He who furnishes the means of convenient circulation, knowing, or having reasonable cause to believe, that it is to be used for that purpose, if it is in fact so used, is guilty of aiding in the publication and becomes the instrument of the libeler" (34 N. Y. Jur. Libel and Slander, § 61; Youmans v. Smith, 153 N.Y. 214). The telephone company is not part of the "media" which puts forth information after processing it in one way or another.[2] The telephone company is a public utility which is bound to make its equipment available to the public for any legal use to which it can be put (see Matter of Shillitani v. Valentine, 296 N.Y. 161; Ann., Right Or Duty To Refuse Telephone, Telegraph, Or Other Wire Service In Aid of Illegal Gambling Operations, 30 ALR 3d 1143) and is privileged under its tariff restrictions to terminate service for cause only in certain prescribed circumstances none of which encompass the subscriber's dissemination of defamatory messages.[3]
*751 It could not be said, for example, that International Business Machines, Inc., even if it had notice, would be liable were one of its leased typewriters used to publish a libel. Neither would it be said that the Xerox Corporation, even if it had notice, could be held responsible were one of its leased photocopy machines used to multiply a libel many times. Yet plaintiff argues that here the telephone company should be liable because equipment leased from it by the author of the libel was used to spread the libel. The telephone company, if anything, would have even less control over the use of its leased equipment than would those companies in the hypotheses just above noted. The latter are not public utilities and are ungoverned by the restrictions which devolve upon defendant; yet, as we have noted, it would not be seriously argued that they would be responsible for publication of a libel simply because their machines were used.
In sum, Jackson published the libel. That he used equipment leased from defendant does not render defendant a copublisher whether it had notice of the use to which the equipment was being put or not.
Order reversed, etc.
NOTES
[1] As of this writing only one law review article discussing the decision below has come to our attention. (Note, Must the Telephone Company Censor to Avoid Liability For Libel: Anderson v. New York Telephone Company, 38 Albany L. Rev. 317.) The author renders the opinion that there was here no publication and compares the telephone company to the United States Postal Service which would not be held liable as a publisher of the letters it delivers (pp. 322-323). This comparison suffers because it is unlikely the Postal Service would have notice of the contents of such letters. The two message transmission systems are alike, however, in that both are in no way involved in preparing or processing the message itself.
[2] See the discussion in Harper and James (The Law of Torts, vol. 1, § 5.18, pp. 404-406) concerning the predicates for liability of the telegraph company, none of which apply with respect to the telephone company the employees of which perform no active or affirmative function in the preparation or transfer of the message.
[3] In Matter of Figari v. New York Tel. Co. (32 A D 2d 434) it was even held that the telephone company could not require a lessee of its recording equipment to state his name and address on the recording. Such a restriction on the free use of the equipment violates free speech protections said the court and that the Public Service Commission should not have approved such a restriction since the State has no interest in uncovering authors of defamatory matter so as to aid potential plaintiffs.